THEODORE B. FORD *vs.* HENRY C. C. MILES ET AL.

Third Judicial District, Bridgeport, October Term, 1918.
RORABACK, WHEELER, BEACH, GAGER and CURTIS, Js.

The plaintiff sought to restrain the defendants, under a covenant obligatory upon them, from erecting upon land lying between Bay Shore Drive and Long Island Sound "in front" of the plaintiff's premises, any building or structure which would interfere with or obstruct the view of the Sound from Bay Shore Drive. It appeared that the two lots of the plaintiff fronted, not immediately upon Bay Shore Drive, which ran east and west for about seventeen hundred feet at a distance of approximately two hundred feet north of the water's edge, but upon a short street which diverged therefrom in a northeasterly direction at an angle of about thirty degrees, starting from a point two hundred feet west and south of the plaintiff's premises, thus leaving a small triangular strip of land between this divergent street and Bay Shore Drive. *Held* that the proper construction of the covenant prohibited the erection of obstructions to the view only upon land embraced within lines drawn from the front corners of the plaintiff's premises to the seashore at right angles to Bay Shore Drive, and not at right angles to the divergent street; and that inasmuch as the judgment apparently conflicted slightly with this construction as to one of the defendants, it was to that extent erroneous.

Argued October 23d, 1918—decided January 30th, 1919.

SUIT to restrain the defendants from violating a covenant not to build or allow to be built on their

Ford *v.* Miles.

respective premises any building or structure "in front of" the plaintiff's land that would interfere with or obstruct the view of Long Island Sound, and for damages, brought to and tried by the Superior Court in New Haven County, *Case, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *Error in part.*

Welch Point and Pond Point on the Milford shore are about one mile apart. Between these two points the shore line is a fairly regular concave curve extending in shore about one third of a mile from a line connecting the two points. The view from the shore toward the Sound is unobstructed between these two points.*

From some time prior to 1900 to his death in 1913, H. C. Miles owned a tract of land fronting on this shore

---

\* The following cut or diagram may be helpful to a correct understanding of the situation, though it does not purport to be an exact reproduction of any of the Exhibits. *Reporter.*

for a considerable distance, and located about the middle, or just westerly of the middle, of the curved shore.

As early as 1900 Miles began selling lots from this tract fronting on the Sound, and in March, 1905, had drafted and recorded in the town clerk's office a map, Exhibit B, on which were plotted some fourteen to sixteen lots. This is the map referred to in the deed of March 31st, 1905, by H. C. Miles, of lot 59 to the plaintiff's predecessor in title. In the fall of 1905 Miles drafted and recorded a new map, Exhibit A, designating the whole tract as Bay View Heights, and on this map were plotted a large number of lots, also a new street, Walnut Street, cutting through the line of lots plotted on Exhibit B. This map, Exhibit A, did not affect the lot 59, but did change the adjoining lot, 60, making it an irregular shaped lot next westerly of the new Walnut Street. This lot, 60, as shown on Exhibit A, was conveyed by Miles to the plaintiff's predecessor in title July 12th, 1906. The map, Exhibit A, shows a street, Bay Shore Drive, extending along the whole front of the property approximately two hundred feet from the water's edge, and substantially parallel with the shore line; no lots were plotted on Exhibit A between Bay Shore Drive and the Sound, nor was Walnut Street extended shoreward beyond the Drive.

Bay Shore Drive extends in a straight line about easterly and westerly for one thousand seven hundred feet or more along the whole front in controversy, and is laid out forty feet in width. For some reason, beginning at a point nearly two hundred feet westerly of the southwest corner of lot 59, a street diverges northeasterly from the line of Bay Shore Drive, at an angle of perhaps thirty degrees, and extends in front of lots 59 and 60 to Walnut Street as laid out on Exhibit A. At the same time the street marked Bay Shore Drive is extended for its whole length without change

Ford *v.* Miles.

of direction and in front of the divergent street. This leaves a triangular shaped unoccupied piece of land between the divergent street and the main line of Bay Shore Drive and in front of lots 59 and 60. The fronts of 59 and 60 are at an angle of about thirty degrees with the main line of Bay Shore Drive, fronting, in fact, not on the main drive, but on the divergent street. The divergent street has no distinctive name upon any of the maps, but appears to have been regarded as an offshoot of Bay Shore Drive. The location of this divergent street with relation to Bay Shore Drive may be likened to that of the hypothenuse of a right-angled triangle to the base, its base representing about two hundred and fifty feet out of the one thousand seven hundred feet of Bay Shore Drive.

In 1914 the defendant H. C. C. Miles, successor in title by descent from his father, H. C. Miles, prepared and recorded a new map, Exhibit C, which, for the purposes of this case, differs from Exhibit A only in extending Walnut Street across Bay Shore Drive at a slight angle, acute toward the northeast, to the shore line, and in plotting lots between Bay Shore Drive and the shore line from Walnut Street easterly for some hundreds of feet. These are lots 106a to 111a, then a street, and then lots 132a to 135a to a creek. H. C. C. Miles sold these lots, 106a to 111a, 132a to 135a, to the other defendant, Haskins, on June 13th, 1917, and in the description referred to the map Exhibit C. The plaintiff obtained title to lots 59 and 60 as shown on Exhibit A and Exhibit C, in June, 1912.

The original deeds from H. C. Miles to the plaintiff's original predecessors in title each contained the following covenant: "That the said grantor for himself, his heirs and assigns hereby covenants and agrees with the said grantees, their heirs and assigns, not to erect, build or suffer to be built upon that portion of his prem-

Ford *v.* Miles.

ises lying between Bay Shore Drive and Long Island Sound in front of the land herein conveyed, any building or structure other than open or sideless coverings to within two feet of the ground for view seats, that shall interfere with or obstruct the view of the Sound from Bay Shore Drive. . . . It is expressly covenanted and agreed that the violation of any of the foregoing conditions shall be deemed 'a nuisance and the same may be restrained by an injunction or other due process of law."

The lots 59 and 60 are each fifty feet front on the divergent street. Lines extended from the southeasterly and southwesterly corners of these two lots perpendicularly to the front lines of the lots will cross the main line of Bay Shore Drive at an oblique angle of approximately one hundred and twenty degrees on the northeasterly angle of intersection, and will cross Walnut Street, as extended, south of Bay Shore Drive and some parts of lots 106a to 110a sold to the defendant Haskins. Lines extended to the shore from the southeasterly and southwesterly corners of lot 59 and the southwesterly corner of lot 60 perpendicularly to the main line of Bay Shore Drive will not cross any line of the lots between the Drive and the shore line sold to the defendant Haskins as plotted upon Exhibit C. The line extended to the shore from the southeasterly corner of lot 60 in a line perpendicular to Bay Shore Drive, will cross Walnut Street and the westerly line of lot 106a conveyed to defendant Haskins, apparently, from Exhibit C, about the middle of the westerly line of lot 106a, and will include within the two lines from the corners of lot 60, drawn perpendicular to the Drive, a triangular piece of land about twenty feet wide on the water's edge, diminishing to nothing at a point about one hundred and twenty-five feet northerly of the shore line measured on the westerly line of lot 106a.

These measurements, except the frontage of lots 59 and 60, are obtained by scaling upon the maps, and are approximate only, the finding not disclosing accurate measurements. It did not appear that any structure had yet been erected on any of the lots sold to Haskins, or on any other land between the Drive and the shore affected by the action.

*Arthur M. Comley,* for the appellant (plaintiff).

*Omar W. Platt,* for the appellees (defendants).

GAGER, J. This is an action for an injunction restraining the defendants from building upon their land on the Milford shore between Bay Shore Drive and Long Island Sound, so as to interfere with the view of the Sound from the Drive; and also from developing their land between the Drive and the Sound as sites for shore cottages, and from advertising and offering said land and lots for sale as cottage sites, and from opening streets through any portion of this land. Plaintiff also claims damages. It does not appear that any structures have yet been built, but Walnut Street has been mapped over this tract between the Drive and the shore, and the land easterly of Walnut Street and between the Drive and the shore has been plotted into ten lots and a street, by the defendant Miles, and the ten lots have been sold by him to the defendant Haskins for cottage sites.

The complaint alleges, and the answer admits, that the defendant Haskins has cut up into building lots the land conveyed to him between Bay Shore Drive and the Sound, and has staked the same out into building lots and streets, and threatens to build cottages on the lots and to sell the lots to the public for purposes of building summer cottages, and threatens to build

Ford *v.* Miles.

and maintain roads through the tract for the purpose of expediting building on said lots; and the defendants have prepared and filed maps showing the portion of the land between Bay Shore Drive, Walnut Street and Long Island Sound, cut up into lots for building purposes, and have advertised them for sale as sites for building summer cottages, and themselves have threatened to erect cottages and dwellings thereon.

The real purpose of the action is to prevent the use of these lots for the erection of shore cottages or other buildings. The claim for an injunction is based upon a covenant of H. C. Miles contained in each of the original deeds of lots 59 and 60. The essential part of the covenant reads: "That the said grantor for himself, his heirs and assigns, hereby covenants and agrees with the said grantee, her heirs and assigns, not to erect, build or suffer to be built upon that portion of his premises lying between Bay Shore Drive and Long Island Sound in front of the land herein conveyed, any building or structure other than open or sideless coverings to within two feet of the ground for view seats, that shall interfere with or obstruct the view of the Sound from Bay Shore Drive."

By referring to the statement of facts, it will be seen that Bay Shore Drive extends for some one thousand seven hundred feet in a straight line, and in front of the lots in question substantially parallel with and about two hundred feet northerly of the water line. To the north of this Drive a street diverges at an acute angle, starting with the north line of Bay Shore Drive at a distance of about two hundred and fifty feet westerly of the easterly line of lot 60 measured on the Drive, and this divergent street, branching from the main drive at an angle of about thirty degrees, is about three hundred feet in length, and at its easterly end is about one hundred and fifty feet northerly of the Drive. Lots

59 and 60 front on this divergent street. The situation may be likened to that of a right-angled triangle, the divergent street being the hypothenuse, while the base is two hundred and fifty feet out of the total length of one thousand seven hundred feet of Bay Shore Drive. Between the divergent street and the main drive the maps show a small triangular tract apparently left open, but, on all the maps, separated from the streets by straight lines. Between the Drive and the Sound is a strip of shore front or beach, approximately two hundred feet in width. The covenant referred to was admittedly intended to prevent the use of some portion of this strip for any purpose which would "interfere with or obstruct the view of the Sound from Bay Shore Drive." The question is, what portion of the beach between the Drive and the shore line is intended to be covered by the covenant in the deeds? It is that portion of the beach southerly of the Drive and in front of the land conveyed, and the view to be secured is the view of the Sound from Bay Shore Drive.

The plaintiff contends, broadly, that this means any land between the Drive and the Sound which will interfere with the view from the front of lots 59 and 60; but this is inadmissible, as it enlarges the meaning of the covenant beyond any reasonable construction of its language. The description definitely limits the effect of the covenant to specific land in front of the land conveyed and on the shore side of Bay Shore Drive, and, by its express terms, has reference to the view from the Drive. The question, then, narrows down to this: is the frontage to be determined with reference to the main line of the Drive, or to the line of the divergent street? If the latter, then the lines determining the width cross the main Drive at a considerable angle. If the frontage of all lots on the north side of Bay Shore Drive were determined in this way, at the angle of the

main line of the Drive with the divergent street, some land south of the Drive would not front on any lots northerly of the Drive, and the frontage of some lots on the divergent street would intersect and cover portions of the frontage of other lots facing the main Drive; and if this principle were carried out, the frontage required to satisfy this construction would exceed the length of the main Drive as the length of the hypothenuse of a right-angled triangle exceeds the base. This seems absurd. We think the frontage should be determined in such a manner that the combined frontages of all the lots on the northerly side of the Drive will exactly equal all of the frontage on the south side of the Drive, and that the straight line or course of the main Bay Shore Drive is to be taken as the base line, and not the short divergent street. The frontage of each lot situated on the north side of the Drive will be determined by lines drawn from the southerly corners of these lots on the north side perpendicular to the southern line of Bay Shore Drive, which is the same course as the main line or course of this drive. An extension of these lines to the water will determine that portion of the grantor's premises between Bay Shore Drive and the Sound in front of the lots on the northerly side of the Drive, which will be that land lying between the extension to the Sound of lines drawn from the southerly corners of each lot perpendicular to the main course or direction of Bay Shore Drive.

The covenants in the deeds of the lots 59 and 60, are identical with a covenant in each of the three deeds given by H. C. Miles prior to the deeds of the lots in question, one of which fronted on the divergent street and two on the main line of the Drive, immediately west of the beginning of the divergent street. No land easterly of Walnut Street has been conveyed with covenants similar to those in question; and in 1908,

H. C. Miles conveyed the first lot easterly of the beginning of the divergent street, with a covenant as to free use of that portion of the beach lying between two lines described in the deeds as follows: "Bounded on the west by a line commencing at a point on the southerly line of Bay Shore Drive forty feet distant, from and opposite to the junction of the westerly line of 'Old Field Avenue' with the northerly line of Bay Shore Drive, and thence running at right angles with said Bay Shore Drive to Long Island Sound, and on the east by a line commencing at a point on the southerly line of Bay Shore Drive forty feet distant and opposite to the junction of the westerly line of 'Walnut Street' with the northerly line of said Bay Shore Drive, and thence running at right angles with said Bay Shore Drive to the waters of said Sound." Here both lines are at right angles to the southerly line of Bay Shore Drive. This deed from its date is not controlling, but it indicates that H. C. Miles then had in mind lines at right angles to the south line of Bay Shore Drive, as boundaries of the land subject to the restrictive covenant. This description is in harmony with the construction here placed upon the interpretation of the covenant, and in harmony with the idea that the frontage of lots on the northerly side of Bay Shore Drive upon the main drive is determined by perpendiculars to the southerly side of Bay Shore Drive.

The extension of Walnut Street southerly from Bay Shore Drive to the Sound was not shown on any map prior to that of August 3d, 1914, Exhibit C. Walnut Street was not laid out at all when lot 59 was conveyed, and was not laid out beyond Bay Shore Drive when lot 60 was conveyed. The intention of the parties must be determined from the language of the covenants as applied to the maps, Exhibits B and A, from which the plaintiff's lots take their description, and there is noth-

ing in the maps, deeds or verbal testimony, which authorizes any finding or inference of fact that Walnut Street, as extended on the map of 1914, has anything whatever to do with the determination of what land was in front of the premises conveyed in 1905 and 1906. No later plotting of the land or descriptions in deeds subsequent to the deeds of the lot in question, and no change of plans or intention by the grantor or his successor in title, can operate to limit or abridge the rights arising from the deeds themselves at the time when they were delivered. If the adoption of Walnut Street south of Bay Shore Drive as determining the easterly line of land in front of lots 59 and 60 is regarded as a conclusion of law, this conclusion is erroneous. The true easterly line of land in front of lot 60 is the line drawn from the southeasterly corner of lot 60 perpendicular to the southerly line of Bay Shore Drive, extended thence to the shore. This line, as appears by scaling the map Exhibit C, on which defendant Haskins' lots first appear to be plotted, intersects the westerly line of Haskins' westerly lot, 106a, about midway between Bay Shore Drive and the Sound, and brings within the land in front of lot 60 a triangular piece on the southwesterly part of defendant Haskins' westerly lot, approximately twenty feet wide at the shore line diminishing to nothing at about one hundred and twenty-five feet northerly of the shore line. Whatever, upon further trial, the quantity of land may be, an injunction should issue, under the prayer for injunctive relief, as to so much of the defendant Haskins' land as lies westerly of the line drawn from the southeast corner of lot 60 perpendicular to the southerly line of Bay Shore Drive and extended thence to the sea. Walnut Street, between the Drive and the seashore, covers, in some parts of its course, the width of the entire frontage of lot 60 and part of the frontage of lot 59. The only use of the

Ford *v.* Miles.

land within the lines of Walnut Street shown upon the map is as a street, and this is not within the prohibition of the covenant. Whether any change will ultimately be made by the defendant Miles by which it is attempted to divert it to some other use, of course does not appear, but no act of his with reference to this land is shown warranting an injunction at the present time.

The covenant really relates to the use for the erection of structures, and not to the title of the lots described as sold to the defendant Haskins. At the bringing of the action the title was in him and not in the defendant Miles. The complaint relates only to the lots sold to Haskins, and the defendant Miles is not shown to have done anything except to sell the lots, which he was prevented from doing by the terms of the covenant.

As the court adopted an erroneous theory for determining the lines of the frontage, the finding gives no information of the exact location of the true lines of the frontage other than can be approximated on scaling the maps, and the location and distances of the lines as above stated must be taken as approximate derivations from the only accurate information furnished. The difference in ultimate results may be slight, but the case should be returned for an accurate ascertainment of the side lines of the frontage in accordance with this opinion. The conclusion reached sufficiently disposes of the reasons of appeal.

There is no error as to the defendant Miles. There is error as to the defendant Haskins; the judgment as to him is set aside and the cause is remanded for further proceedings according to law.

In this opinion the other judges concurred.