THE WATERBURY TRUST COMPANY *v.* THE G. L. D.
REALTY COMPANY ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued February 2d—decided April 8th, 1938.

*J. Warren Upson,* with whom, on the brief, was *Lawrence L. Lewis,* for the appellant (plaintiff).

*Frederick C. Smedley*, with whom was *L. Russell Carter*, for the appellees (defendants Waterbury National bank et al.).

*Michael J. Galullo*, with whom was *Theodore V. Meyer*, for the appellee (defendant Waterbury Savings Bank).

*Hugo Gustaferri* appeared on the brief for the appellees (defendants The G. L. D. Realty Company et als.).

HINMAN, J. The facts alleged in the complaint are similar in most respects to those in *Waterbury Trust Co.* v. *G. L. D. Realty Co.*, 121 Conn. 50, 182 Atl. 466, in which we held that ejectment, claimed therein, would not lie for an easement. The present action claims injunctive relief including a mandatory injunction compelling the defendants to remove that part of a building, erected and maintained by the named defendant, herein referred to as the defendant, which, it is alleged, encroaches upon land which is subject to an easement appurtenant to land of the plaintiff. The other defendants, as before, are mortgagees and a lessee. Several special defenses were interposed, but the primary and principal issue was whether or not any part of the defendant's building is located on land subject to the plaintiff's easement. Both the plaintiff and the defendant seek corrections of the finding, and we have given both the benefit of such as we find them entitled to which are material to the decisive conclusions.

Prior to December 6th, 1850, James L. Scovill owned a piece of land, approximately triangular in shape, bounded easterly, for the most part, on North Main Street in Waterbury. On that date he conveyed

to Lyman W. Coe a northerly portion of this tract, the south line of the piece conveyed running westerly from the highway 66.27 feet. This conveyance left remaining in Scovill's ownership a tract of land lying westerly of that 'conveyed and extending southerly of the line last mentioned and including land bounded northerly by that line, and easterly by the highway which ran at such an angle to that line that if the westerly boundary line of the tract conveyed to Coe were extended southerly it would intersect the highway at a point about one hundred and sixty-seven feet southerly of the southwesterly corner of the land conveyed. In the deed to Coe the grantor, for himself, his heirs and assigns agreed with the grantee, his heirs and assigns, "that the land owned by me lying at the south end of the . . . piece [conveyed] and between said land and the highway shall forever remain open and unenclosed, and that no building or buildings shall ever be erected on the same, also the right to pass and repass across said land at all times." The land so deeded to Coe was conveyed from time to time and in 1923 was purchased by the Waterbury Aerie, Fraternal Order of Eagles, and on November 21st, 1923, was quitclaimed to trustees who, on December 19th, 1923, mortgaged the premises to the plaintiff; thereafter the note secured by the mortgage became in default, the plaintiff foreclosed its mortgage, title became absolute in it on May 11th, 1936, and it is in possession of the premises.

Prior to August 15th, 1928, Anthony P. Vastola had acquired title to the land remaining in Scovill after the conveyance to Coe, including land lying westerly of it, and on that date conveyed to the defendant a lot which included a parcel measuring 48.65 feet on the westerly boundary, 29.47 feet on the northerly line and 55.37 feet along North Main Street, as to

which, on July 5th preceding, Vastola had acquired
from the trustees for the Eagles a quitclaim deed re-
leasing all rights therein or thereto. After the con-
veyance from Vastola to the defendant there remained
owned by him a parcel 53 feet wide on the west
boundary and about 63 feet on the east, lying between
the land of the plaintiff and that of defendant, abut-
ting 66.27 feet on the former and about 30 feet on
the latter. Commencing in June, 1929, the defendant
erected, on the land conveyed to it, a building four
stories in height, of modern brick construction, the
front portion of which occupies practically all of the
area of the Scovill land which was included in the
conveyance from Vastola and which was purported
to be released from the easement by the trustees for
the Eagles.

Upon completion of the building the defendant
mortgaged its premises to the Waterbury Savings
Bank to secure a loan which now amounts to about
$122,000, and gave a mortgage to Vastola which was
subsequently transferred to the defendant Waterbury
National Bank, which had itself acquired a mortgage
on the premises subsequent to that of the Savings
Bank. The amount now due to the National Bank
is $106,500.

For more than fifteen years access from the Eagles'
building to North Main Street has been had by a
walk from the front porch of that building to a point
on the street north of the northernmost point occu-
pied by the G. L. D. building and by a branch walk
still further north and the defendant's building in
no way interferes therewith. These walks have been
the only part of the land lying southerly of the Eagles'
property used for passing and repassing and they have
been surrounded by land used as a lawn. The plaintiff
failed to show any interference with the alleged ease-

ment of light and air by the erection of the defendant's building.

As to the area incumbered by the easement, the trial court found the description in the deed from Scovill to Coe, above quoted, to be "subject to varying interpretations" and made a finding which included in that area all of the Scovill land south of the southerly line of the land conveyed by Scovill to Coe, but also found in subsequent paragraphs that "the description contained in the covenant covers only land included between the southerly boundary of the land conveyed to Coe, a line drawn from the westerly end of said southerly boundary perpendicular to the nearest line of the highway, and said nearest line of the highway from the end of said perpendicular to the easterly boundary of land conveyed to Coe," and that "no part of the land on which the G. L. D. building is erected is included by the description of the land encumbered. . . ." The conclusions stated as to this point are that "the court could not find what the boundaries of the piece of property giving rights to the present dispute were;" "the covenant . . . was intended to do no more than protect the holders of the dominant tenement;" the G. L. D. building "does not lie within the bounds of the servient tenement" and "does not impair the rights of the appellant . . . because the building does not come within the area burdened with this easement;" "the appellant may . . . have some rights in land immediately adjoining its land on the south end thereof because of the deed from Scovill to Coe . . . but any such rights do not extend to any land the subject of this litigation." The first mentioned finding is attacked by the appellees, and is not only so entirely inconsistent with the other quoted findings and conclusions that it obviously was

included by inadvertence, but also lacks essential support from the record.

Determination of the extent of the area made subject to the easement depends upon interpretation of the restrictive covenant in the deed from Scovill to Coe. The accepted rules applicable thereto include that when more than one interpretation is permissible restrictions upon the use of land are not to be extended by implication, doubtful language will be construed against rather than in favor of the covenant, and when the meaning of language is doubtful it, with its context, is to be read in the light of surrounding circumstances presumably considered by the parties. *Bassett* v. *Pepe*, 94 Conn. 631, 637, 110 Atl. 56; *Easterbrook* v. *Hebrew Ladies' Orphan Society*, 85 Conn. 289, 295, 82 Atl. 561. The interpretation contended for by the plaintiff, subjecting to the easement the entire tract, lying southerly of its land, which remained in Scovill after the deed to Coe, would enlarge the meaning of the covenant beyond any reasonable construction of the language with deference to these rules. It is apparent from the disclosed circumstances obtaining at the time the deed was given, especially the location and angle of frontage of the building then and now near the southerly boundary of the parcel conveyed to Coe, that the purpose of the restriction was to afford means of access in a logical and convenient course, and freedom from obstructions between that parcel and building and the street which would interfere with the use and enjoyment thereof. The extent of the land "lying at the south end" of this parcel and "between said land [conveyed] and the highway" subjected to the easement is fairly to be regarded as intended to be such only as would reasonably serve these purposes. *Ford* v. *Miles*, 93 Conn. 222, 228, 105 Atl. 443. We are unable to deduce from

the situation here justification, as in *Ford* v. *Miles,* supra, for arbitrary designation, as in the further finding we have quoted, of a line from and perpendicular to the highway to the westerly end of the southern boundary of plaintiff's land, and regard as correct the conclusion, stated by the trial court, that it could not find this boundary with exactitude. A finding is warranted that this line could not, at most, be considered to be far enough south to include any of the land built upon by the defendant and this accords with the finding and conclusion that no part of the land on which the building stands is so included. This conclusion is sufficient to support the judgment for the defendants, and we discuss only one further point involved in this appeal.

The finding states that the G. L. D. building was in process of erection from June, 1929, to May, 1930, and that the appellant knew or should have known of it, but made no claim during that period to any right in the land on which it was being erected, and it does not appear from the record that any such right was asserted until the action for ejectment was brought. The appellant claims that it could not have enjoined the erection or completion of the building unless it appeared that at that time and thereby the security of its mortgage was so impaired as to render it insufficient. Irrespective of whether or not the plaintiff then had such a right or duty, acquiescence without protest or giving notice of its claim to an easement in the land being built upon with its actual or imputed knowledge may be considered in determining the comparative equities between the parties. The relief which the plaintiff really seeks is a mandatory injunction compelling the defendants to remove all parts of the building which encroach upon the area to which the easement attached. The answer to the

question whether, if the G. L. D. building were found to so encroach, the plaintiff would be entitled to such an injunction, "depends upon all the equities between the parties." *Bauby* v. *Krasow,* 107 Conn. 109, 115, 139 Atl. 508. When one has wilfully invaded another's rights in real property, the latter is entitled to have the original condition restored even though the wrongdoer would thereby suffer great loss. "Where, however, there has been an innocent mistake or a bona fide claim of right on the part of the defendant or laches on the part of the plaintiff, or where the conduct of the defendant was not wilful and inexcusable, and where the granting of the injunction would cause damage to the defendant greatly disproportionate to the injury of which the plaintiff complains and it appears that damages will adequately compensate the latter, in such cases it has been held that it would be inequitable to grant a mandatory injunction and the plaintiff has been remitted to his remedy by way of damages." *Bauby* v. *Krasow,* supra, 115; *Sisters of St. Joseph Corp.* v. *Atlas Sand, G. & S. Co.,* 120 Conn. 168, 175, 180 Atl. 303; *Hawley* v. *Beardsley,* 47 Conn. 571; *Pradelt* v. *Lewis,* 297 Ill. 374, 130 N. E. 785.

The G. L. D. Realty Company erected its building at large expense, the construction occupying nearly a year, during which time the plaintiff made no claim to any right in any part of the land upon which it is located. Its grantor, Vastola, had taken the precaution, in 1928, to obtain from the trustees for the Eagles, plaintiff's mortgagor, a release of any rights in this land although, as to this, the trial court held that "it is more reasonable to conclude that [he] got nothing for his $1000 than to say that the . . . Eagles parted with a right." The trial court has found, with sufficient justification from the evidence and in-

ferences from other facts, that the defendant made its investment in the building "in absolute good faith and relying on title searches furnished by competent and experienced counsel," and that the defendant mortgagees had no actual knowledge of any claim of the plaintiff to any rights in the land at the time they acquired their mortgages; also that the plaintiff failed to show any interference with light or air by the erection of the building, that the same ample means of passing between the plaintiff's property and North Main Street still exists as before and is not interfered with by the building, and that "the plaintiff has failed to establish any injury whatever." It seems significant that the plaintiff refrained from including, as it might, a claim for damages among its prayers for relief. The case on the whole strongly suggests a purpose such as that characterized in *St. Stephens Protestant Episcopal Church* v. *Church of Transfiguration,* 114 N. Y. Sup. 623, 630, as one not so much to compel compliance with the restrictions as to force the defendants "to pay a cash consideration for a release." Under these circumstances, if the trial court had based its refusal to grant the injunction on the comparative equities of the parties we could not hold its action an abuse of the discretion vested in it. *Sisters of St. Joseph Corp.* v. *Atlas Sand, G. & S. Co.,* supra, 176.

There is no error.

In this opinion the other judges concurred.