**CRAMER, et al., Plaintiffs, v. NEW PHILADELPHIA BREWERY, Inc., Defendant.**

Common Pleas Court, Tuscarawas County.

No. 26955. Decided June 19, 1945*

*No appeal taken.

600

Bowers, Stafford and Bowers, New Philadelphia, for plaintiffs.

Fisher, Limbach, Smith & Renner, New Philadelphia, for defendant.

## OPINION

By LAMNECK, J.

The six plaintiffs in this case ask that the defendant corporation be restrained from obstructing an alleged driveway known as "Long Alley" leading from South Broadway to Cross Street, S. W., in the city of New Philadelphia, Ohio.

The plaintiffs allege that the defendant corporation interferes with their right to ingress and egress to their respective properties over said driveway by the parking of automobiles and trucks, by building fences, erecting posts, and by piling ashes, debris and refuse thereon. They further allege that the defendant corporation has erected a wooden platform and an overhanging wooden canopy on said right of way.

The defendant corporation in its answer denies the existence of said alleged right of way, and claims the fee title to said right of way free from any interest or easements of the plaintiffs. It admits the alleged use and obstruction.

The plat of "Blakesfield" consisting in part of lots No. 1 to 42, inclusive, was filed for record in the Recorder's Office of Tuscarawas County, Ohio, on June 16, 1846. Lots 13 to 18, inclusive, faced to the east on a street that is now known as Broadway running north and south; lots 19 to 30, inclusive, faced to the south on a street known as Canal Street running east and west; and lots 31 to 42, inclusive, faced to the north on a street known as Blake Street running east and west. On this plat is shown a 16 foot alley, later known as "Long Alley", extending from Broadway to the west to a street called Cross Street, and running between lots 15 and 16, and

between lots 19 to 30, inclusive, and lots 31 to 42, inclusive. A portion of this alley and especially that part between lots 15 and 16 is the alleged right of way in controversy in this case, and will hereafter in this opinion be referred to as "Long Alley".

In 1865 the plat of Blakesfield was legally vacated.

On March 14, 1887, the village of Blakes Mills was incorporated which included what was formerly known as Blakesfield, and at that time the land which was formerly known as lots No. 13 to 22, inclusive, and 39 to 42, inclusive, in the plat of Blakesfield, was owned by Simon D. Beck, and former lots 23 to 30, inclusive, and 31 to 38, inclusive, was owned by William Reidenbach.

The village of Blakes Mills was annexed to the city of New Phildalephia on March 3, 1899.

The defendant corporation received its title for all of its property involved in this suit, with the exception of what was formerly known as lot No. 14, from John and Henry Seibold on May 16, 1933, by warranty deed in which was included what was formerly known as lots 15 to 22, inclusive, and all of that portion of "Long Alley" running from Broadway west to former Cross Alley between former lots 15 and 16 and between former lots 19 to 22, inclusive, and former lots 39 to 42, inclusive. Former Cross Alley adjoined former lot No. 22 and 39 on the west.

John and Henry Seibold received their title from the Stark-Tuscarawas Breweries Company on July 19, 1927, by warranty deed which included all of the land contained in the aforesaid former lots and the same portion of "Long Alley" conveyed in the defendant's deed.

The Stark-Tuscarawas Breweries Company received its title from the New Philadelphia Brewery Co. on March 20, 1905, by warranty deed from the New Philadelphia Brewery Company and this deed included all of the land contained in the aforesaid former lots and the same portions of "Long Alley" conveyed in the defendant's deed.

The New Philadelphia Brewery Co. received its title from Michael Seibold on January 1st, 1904, by warranty deed. This deed included all the land contained in the aforesaid former lots and that portion of "Long Alley" between lots 15 and 16.

The Seibold deed to The New Philadelphia Brewery Co. makes a further conveyance of part of "Long Alley" under the following language:

"Also a strip of land lying between the south ends of said lots numbered 19, 20, 21 and 22 and the Ohio Canal, being

a portion of Canal Street as designated on the aforesaid plat of Blakesfield. Also a right of way 16 feet in width lying north of the north boundary line of said lots above granted. Said right of way being coincident with Long Alley as designated on the above mentioned plat, and extending from Broadway Street to Cross Alley. Said right of way to be used and enjoyed in common with the owner or owners, their heirs and assigns of the lots of land adjoining said right of way on the North."

As to the lots lying north of "Long Alley" above referred to, the plaintiff, Nettie Beck McDermott, owns former lot No. 39, the plaintiff, John H. Cramer, and his wife own 45 feet of former lot No. 40, the plaintiff, Bessie L. Schlafley, owns former lot No. 41 and 5 feet off of former lot No. 40, and the plaintiff, L. J. Breehl, owns former lot No. 42.

Michael Seibold, John Schwab and Adolph Hofenbrach acquired former lots 16, 19, 20, 21 and 22 and certain portions of vacated streets and alleys in the plat of Blakesfield by warranty deed from William E. and Eva Beck on December 4, 1888. With reference to "Long Alley" this deed contains the following:

"Also a right of way 16 feet in width lying north of the north boundary lines of said lots (16, 19, 20, 21 and 22) above granted, said right of way being coincident with Long Alley as designated on the above mentioned plat and extending from Broadway to Cross Alley. Said right of way to be used and enjoyed in common with the owner or owners, their heirs and assigns, of the lots or lands adjoining said way on the north."

While the record is not clear as to what disposition was made of the interest of John Schwab and Adolph Hofenbrach, there is some evidence that their interests were acquired by Michael Seibold by deed. The record does not show how Michael Seibold obtained title to former lots No. 15, 17, and 18.

William E. Beck became the fee owner of former lots 16 and 19 to 22, inclusive, together with the right of way in dispute in this case, by the will of his father, Simon D. Beck, which was probated on December 24, 1887.

Former lot No. 15 was willed by Simon D. Beck to his wife, Hulda Beck, but no mention of a driveway was made in the devise.

Former lot No. 39 was willed by Simon D. Beck to his

daughter, Nettie Beck, now McDermott, one of the plaintiffs in this case, but no reference to a driveway was made in this devise.

It would conclusively appear from the records above set forth:

1. That when the plat of Blakesfield was vacated by Simon D. Beck in 1865, he was the fee owner of all the land contained in former lots 13 to 22, inclusive, and 39 to 42, inclusive, together with "Long Alley" extending from Broadway to Cross Alley.

2. That William E. Beck became the fee owner of at least all of the land contained in former lots 16 to 22, inclusive, together with "Long Alley" extending from Broadway to Cross Alley by the will of Simon D. Beck which was probated on December 24, 1887.

3. That William E. Beck never conveyed his fee title to "Long Alley" extending from Broadway to Cross Alley to anyone.

4. That William E. Beck did convey to a predecessor in title of the defendant corporation, viz.: Michael Seibold, John Schwab and Adolph Hofenbrach, on December 4, 1888, the right to use "Long Alley" from Broadway to Cross Alley as a right of way "to be used and enjoyed in common with the owner or owners, their heirs and assigns, of the lots of land adjoining said right of way on the north," viz.: former lot No. 15 now owned by the defendant corporation, former lot No. 39 now owned by the plaintiff, Nettie Beck McDermott, forty-five feet off of former lot No. 40 owned by the plaintiff,. John H. Cramer and his wife, former lot No. 41 and 5 feet off of former lot No. 40 owned by the plaintiff, Bessie L. Schlafley, and former lot No. 42 owned by the plaintiff, L. J. Breehl.

The plaintiff, Nettie Beck McDermott, was never devised or deeded any interest in Long Alley by express grant.

In the deed of the heirs of Amanda Miller, deceased, to Anna and John H. Cramer, dated April 25, 1933, for part of lot No. 40, no mention is made of "Long Alley". No record evidence was submitted as to the title of intervening owners of this lot since the ownership of Simon D. Beck.

The plaintiff, Bessie L. Schlafley, received her title for former lot No. 41 and 5 feet off of lot No. 40 from Raymond C. Fickes, et al., on January 7, 1937, by. warranty deed. This deed contains the following provision:

"With the right to use as a right of way in common with former grantors, their heirs and assigns, the alley way

designated as Long Alley in said plat of Blakesfield now vacated."

No record evidence was submitted as to the title of intervening owners since the ownership of Simon D. Beck.

The plaintiff, Lawrence J. Breehl, received his title for lot No. 42 from Harriet C. and Carl A. Wolfe, by warranty deed dated May 11, 1942. No reference is made in this deed to the driveway in question. Neither was any record evidence submitted as to the title of intervening owners since the ownership of Simon D. Beck as to this lot.

There is no evidence to show that the plaintiffs, Fred Luikart and Raymond C. Fickes, have any interest in said part of "Long Alley" extending from Broadway to Cross Alley by express grant. While the evidence does not clearly show that the plaintiffs, John H. Cramer, Nettie Beck McDermott, Bessie L. Schlafley and Lawrence J. Breehl, have any interest in Long Alley extending from Broadway to Cross Alley by express grant, the Court will assume that the deed of William E. Beck to Michael Seibold, John Schwab and Adolph Hofenbrach on December 4, 1888 established a grant of a right of way easement to the then owners of the lots now owned by said parties, and that they acquired such right of way easement as an appurtenance to their respective lands.

It would therefore appear from the evidence that the defendant corporation, and the plaintiffs, John H. Cramer (and his wife), Nettie Beck McDermott, Bessie L. Schlafley, and Lawrence J. Breehl, all have a right of way easement over "Long Alley" extending from Broadway to Cross Alley "to be used and enjoyed in common with the owner or owners, or their heirs and assigns of the lots of land adjoining said right of way on the north", by express grant. For a proper determination of the issues in this case the Court must therefore determine whether the interests of the respective parties by express grant have been enlarged or restricted by dedication or prescription.

A right of way may become a public street if dedicated to the public use, but an acceptance is necessary to complete a dedication to the public. (Thompson on Real Property, Sec. 489.) While the deed of William E. Beck to Michael Seibold, et al., on December 4, 1888, might be considered as dedicating that portion of "Long Alley" from Broadway to Cross Alley to the public use, yet such dedication to be effective must be accepted by the city council before it would be complete. Sec. 3723 GC provides that "no street or alley dedicated to public use by the proprietor of ground in any corporation,

shall be deemed a public street or alley, or under the care or control of the council, unless the dedication is accepted and confirmed by an ordinance specially passed for such purpose." While evidence has been introduced in this case showing that the New Philadelphia city council passed a resolution on June 21, 1937, to maintain "Long Alley" as a public alley, yet such resolution does not comply with the specific provisions of §3723 GC. (Railway v Donovan, 111 Oh St 345.)

Before there can be a common law dedication, there must be some unequivocal act or offer to make such a dedication, and it must be accepted by the public: (Railway v Carthage, 36 Oh St 1.) The proof being inadequate to show a dedication either by statute or by common law, it will therefore be held that the rights of the parties were neither enlarged or restricted by a legal dedication.

The Court is of the opinion that the defendant corporation does not have a fee title to any portion of "Long Alley" by express grant, unless its predecessors in title acquired a fee by prescription. In the case Pellissier v Corker, 103 Cal. 516, 37 Pac. 465, it was held that a deed to one "his heirs and assigns, for the sole purpose of an alleyway, to be used in common with the owners of other property adjoining said alleyway" conveys only an easement, and dedicates the land for use as an alleyway. (See also Thompson on Real Property, Sec. 460.)

The record is clear, however, that starting with the deed of Michael Seibold dated January 1, 1904, to the New Philadelphia Brewery Co., the fee of that portion of "Long Alley" between Broadway and Cross Alley and lying between former lots 15 and 16 was included in all the deeds in the chain of the defendant corporation's title.

What effect does possible prescription have on the rights of the parties?

Before the public can claim that a parcel of land has become a public street by prescription, there must be an adverse use by the public under a claim of right and uninterrupted for twenty-one years. (Railway v Roseville, 76 Oh St 108.)

The evidence does not indicate that the public has acquired any right to the use of "Long Alley" as a public street by prescription.

From the evidence presented in this case it can be concluded that the defendant corporation has acquired no additional right over that portion of "Long Alley" extending to the west beyond former lots 15 and 16 by prescription. Neither

does the evidence show that the plaintiffs, Fred Luikart and Raymond C. Fickes, acquired any right to any portion of "Long Alley" in question in this case by prescription. As they have proved no interest in "Long Alley" extending from Broadway to Cross Alley by dedication or express grant, no further consideration need therefore be given to the claims of said Fred Luikart or Raymond C. Fickes as parties plaintiff.

An easement of a right of way may be lost by the adverse control of another for the period prescribed by a statute provided such control has been adverse, open, notorious, and continuous for the whole period. (Thompson on Real Property, Sec. 511.) Under §11219 GC this period is fixed at twenty-one years.

The evidence in this case clearly shows that the defendant corporation and its predecessors in title have not only used that portion of "Long Alley" between former lots 15 and 16 as a right of way, but for over forty years have subjected it to their continuous use as though they were owners in fee without any incumbrances. A loading platform at least five feet wide has been on part of this strip of land for over twenty-one years. Wagons and trucks of the defendant and its predecessors in title have continually blocked its free passage. Loading and unloading operations of the defendant and its predecessors in title, made continuous free passage for other co-owners impossible. The placing of debris and other material on this land by the defendant corporation, and its predecessors in title, has been notorious and continuous. Adjoining land which the defendant corporation owns was paved with brick over twenty-one years ago by a predecessor in title of the defendant, and at the same time the land in question was also paved by the same predecessor in title making a plot of ground between two buildings of the defendant corporation a paved area over which business was conducted between those buildings. Since January 1, 1904, deeds of all the predecessors in title have been given for this strip of land in fee simple without mention of a right of way.

The foregoing facts would indicate that the defendant corporation had acquired a fee simple title to this strip of land if it were not for the fact that the plaintiffs and their predecessors in title having an easement by express grant made occasional use of part of this strip for a foot passage and at intervals drove vehicles thereover when the plaintiff corporation and its predecessors in title were not obstructing it. However, this occasional use by the plaintiffs having an

express grant was subordinate to the enlarged use by the defendant corporation and its predecessors in title for over twenty-one years.

These circumstances bring about a situation which is difficult of solution. The enlarged use of the defendant which it has exercised cannot now be abridged. Neither can the rights of the plaintiffs having an express grant be entirely disregarded.

There is no question that the rights of the plaintiffs having an express grant to use this strip of land as a right of way unobstructed at all times was lost by the inconsistent and antagonistic acts of the defendant corporation and its predecessors in title for over twenty-one years. The great length of time during which no objection was made, and the obstructions making free passage impossible, is sufficient to enlarge the defendant corporation's use. (Thompson on Real Property, Sec. 695.)

In this case the defendant corporation has made permanent improvement on this strip of land which the plaintiffs insist be now removed. Where permanent structures have been constructed over an alleged right of way, the right of a dominant owner to an injunction compelling the removal of such structures has been held to depend on the equities of the parties. (Trust Co. v Realty Co. 124 Ct. 191, 199 Atl. 106.)

Plaintiffs having an express grant have access to public streets in other ways so no way of necessity over this strip is required.

The plaintiffs having an express grant and their predecessors in title have placed themselves in a position where they cannot now demand a free and unobstructed right of way over this strip of land. While they still have some easement rights subordinate to the enlarged rights acquired by the defendant corporation, their exercise in view of the business of the defendant corporation, the uncertainty of the use, and the personal hazard involved, is practically impossible.

The Court does feel, however, that the defendant corporation should pay damages for the encroachment such as was authorized in the case of Powers v Ward, 200 Ky. 476, 255 S. W. 105, for the loss which the plaintiffs will sustain by reason of the permanent obstruction.

In the event that the parties are unable to agree as to the damages sustained, this cause will be continued for the taking of additional evidence on the question.

608

After such damages are assessed and paid to the four plaintiffs having an express grant, the plaintiffs' prayer for an injunction for that portion of "Long Alley" between former lots 15 and 16 will be denied, but will be sustained as to the remainder of "Long Alley" extending to Cross Alley.