JULIA M. MOORE ET AL. *v.* HELEN SERAFIN ET AL.

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, Js.

1

Argued February 1—decided April 19, 1972

*Penfield C. Mead,* for the appellant (named plaintiff).

*John E. Silliman,* with whom, on the brief, was *Arthur B. Locke,* for the appellee (defendant Colonial Cemeteries, Inc.).

*Howard G. Shiffman,* for the appellee (named defendant).

SHAPIRO, J.   In this action the plaintiffs, owners of lots in Fairfield Memorial Park, sought an injunction requiring the removal of a mausoleum

which had been erected by the defendants Helen and Stanley D. Serafin on their burial plot in a section of this private cemetery, which is owned and operated by the defendant Colonial Cemeteries, Inc. Also sought was an injunction restraining the defendant cemetery from permitting certain future construction claimed to be forbidden. The Court of Common Pleas rendered judgment for the defendants, and only the plaintiff Julia Moore, hereinafter called the plaintiff, has appealed to this court.

The finding, with such corrections as are warranted, discloses the following: Colonial Cemeteries, Inc., owns and operates a place of burial in the town of Stamford, known as Fairfield Memorial Park. Original deeds to purchasers of burial plots from Colonial Cemeteries, Inc., contain a restrictive covenant in the following language: "No monument, tombstone, vault, marker, fence, coping, mound or other object of any kind protruding above the surface of the ground may be erected or any hedge, plants, trees or flowers be planted on such plot except such as may be approved by the said grantor, and no monument or other structures extending above the ground shall be erected as a family memorial or otherwise, and in place thereof shall be used bronze tablets or grave markers of uniform size to be specified by the grantor, lying flush with the turf."

The plaintiff owns several plots located in Fairfield Memorial Park, some of which she purchased prior to 1963, when the mausoleum in dispute was erected. She claims she was induced to purchase these because she believed no above-ground structure would be permitted there. The remains of the plaintiff's father, mother and two sisters lie buried

in Fairfield Memorial Park. Her mother was buried there in September, 1969. The plots containing their remains are located in a section of the cemetery different from the section containing the Serafin plot but are within sight of the mausoleum.

On November 23, 1962, Colonial Cemeteries, Inc., by deed, conveyed to the defendants Serafin a plot designated "A" in the pine grove section of Fairfield Memorial Park. In addition to containing the language recited in the restrictive covenant, this deed had typed on its face: "2-crypt mausoleum and two vault spaces."

Between November, 1962, and April, 1963, a stone mausoleum costing $5800 was constructed on the Serafin plot, which is in a section that has not been developed or subdivided into burial plots. The actual time for its erection on the site was about two weeks. The mausoleum measures four feet by seven feet, is about four or five feet high, and rests on a base flush with the surface, the base extending about five feet below the surface of the ground. There are no other mausoleums on the site of Fairfield Memorial Park.

The plaintiff made no complaint regarding the presence of the mausoleum until February, 1965, and at the trial offered no evidence of a monetary or other specific loss which she would suffer through the continued presence of the mausoleum. The defendant Helen Serafin was at the time of the trial seventy-seven years of age and the removal of the mausoleum would seriously affect her health. Since June, 1963, the mausoleum has contained the body of Wasyl Serafin, the father of the defendant Stanley Serafin, and is designed to accommodate the remains of his mother, the defendant Helen Serafin, on her death.

The trial court reached the following conclusions, none of which is attacked by the plaintiff: Restraining the action of an individual or corporation by injunction is an extraordinary power which should be used only for the prevention of great and irreparable injury; the plaintiff has not established that the injury to her in leaving the mausoleum in place outweighs the injury to be suffered by the defendants Serafin if they are enjoined to move the mausoleum; and the defendants are entitled to judgment denying the requested issuance of an injunction. In its finding, the trial court found no facts and reached no conclusions relating to the construction of the restrictive covenant itself. It did, however, deny the plaintiff's claim of law that the restrictive covenant forbids the erection of a mausoleum. Although we may reasonably infer from this action that the court believed that the covenant allowed the defendant cemetery to give permission for such structures, the court did not base its denial of the mandatory injunction on this belief. It chose instead to predicate its denial of a mandatory injunction on the conclusion that even if the covenant does not allow the erection of such structures, a court of equity may in its discretion deny equitable relief in this case.

Other than claims related to the finding, which was corrected as required, the plaintiff's appeal is limited to claimed error in the overruling by the court of her claims of law that the restrictive covenant in the deed clearly forbids the erection of a mausoleum; that it cannot be waived or modified since no express right to do so was retained by the grantor, and that she, as grantee of a common grantor under a common development plan of

record, may enforce the restriction against all other grantees in Fairfield Memorial Park without having proved special damage or the amount of damage or injury.

The granting of injunctive relief in each case is within the sound discretion of the trial court exercised according to recognized principles of equity. *Dimmock* v. *New London,* 157 Conn. 9, 18, 245 A.2d 569; *Waterford* v. *Grabner,* 155 Conn. 431, 434, 232 A.2d 481; *Lebanon* v. *Woods,* 153 Conn. 182, 195, 215 A.2d 112; *Holt* v. *Wissinger,* 145 Conn. 106, 113, 139 A.2d 353; *Weil* v. *Poulsen,* 142 Conn. 213, 216, 112 A.2d 890; *Adams* v. *Greenwich Water Co.,* 138 Conn. 205, 218, 83 A.2d 177; *Maganini* v. *Hodgson,* 138 Conn. 188, 195, 82 A.2d 801; *Farrington* v. *Klauber,* 130 Conn. 170, 173, 32 A.2d 644; *Platt Bros. & Co.* v. *Waterbury,* 72 Conn. 531, 554, 45 A. 154; *Fisk* v. *Hartford,* 70 Conn. 720, 732, 40 A. 906. In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction. *Adams* v. *Greenwich Water Co.,* supra; *Maganini* v. *Hodgson,* supra, 196; *Sisters of St. Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.,* 120 Conn. 168, 175, 180 A. 303; *Bickell* v. *Moraio,* 117 Conn. 176, 187, 167 A. 722; *Bauby* v. *Krasow,* 107 Conn. 109, 115, 139 A. 508; *Gage* v. *Schavoir,* 100 Conn. 652, 668, 124 A. 535; *Robinson* v. *Clapp,* 65 Conn. 365, 380, 32 A. 939; 42 Am. Jur. 2d, Injunctions, §§ 58, 306; 20 Am. Jur. 2d, Covenants, Conditions and Restrictions, §§ 313, 328. Where the granting of the injunction would cause damage to the defendant greatly disproportionate to the injury of which the plaintiff complains, it may be held inequitable to grant a mandatory injunction and the plaintiff may

be remitted to her remedy by way of damages.[1] *Waterbury Trust Co.* v. *G. L. D. Realty Co.*, 124 Conn. 191, 199, 199 A. 106; *Sisters of St. Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.*, supra; *Armstrong* v. *Leverone*, 105 Conn. 464, 475–76, 136 A. 71; *Bauby* v. *Krasow*, supra, 116; *Hawley* v. *Beardsley*, 47 Conn. 571.

The trial court applied this so-called doctrine of comparative injury in concluding that it would be inequitable to grant a mandatory injunction. The plaintiff does not assign as error this conclusion and has neither made draft findings nor briefed the issue of whether the trial court abused its discretion in denying equitable relief because of a misapplication of the doctrine in this case. See *Adams* v. *Greenwich Water Co.*, supra; *Sisters of St. Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.*, supra, 176; 20 Am. Jur. 2d, Covenants, Conditions and Restrictions, § 329. She does not successfully attack any finding of fact in this case which might tend to bring the defendant within the indicated scope of the recognized doctrine, but has, instead, confined her brief and her assignments of error solely to her proper legal rights arising under the covenant. We must conclude, then, that the court properly weighed the equities between the parties

---

[1] The issue whether such relief should have been granted is not before us. In her complaint the plaintiff sought only injunctive relief. See ad damnum clauses in Practice Book, Part II, Injunction Form Nos. 345–360, which illustrate prayers for alternative monetary relief. The plaintiff has at no time sought money damages and no money damages were awarded. See General Statutes § 52-137. The plaintiff in her brief asks only that we direct the trial court to render judgment for her in the form of an injunction requiring removal of the mausoleum and forbidding future construction of others. The plaintiff does not attack the trial court's finding that she offered no evidence of a monetary or other specific loss. Rather, she concedes in her brief that she has proved no monetary damages or even the existence of such damages.

and that there was no abuse of its discretion in refusing to order the removal of the mausoleum. Thus, irrespective of the view that we may take of the merits of the plaintiff's assignments of error, which are directed solely to the proper legal construction of the restrictive covenant, we cannot remand this case with direction that the mandatory injunction sought be granted. That one has an enforceable legal right does not necessarily entitle him to the remedy of an injunction and particularly so when injunctive relief itself would be incompatible with the equities of the case. *Gerald Park Improvement Assn., Inc.* v. *Bini,* 138 Conn. 232, 236, 83 A.2d 195; *Heppenstall Co.* v. *Berkshire Chemical Co.,* 130 Conn. 485, 488, 35 A.2d 845; *Hooker* v. *Alexander,* 129 Conn. 433, 438, 29 A.2d 308; *E. M. Loew's Enterprises, Inc.* v. *International Alliance,* 127 Conn. 415, 418, 17 A.2d 525; *Fidelity Title & Trust Co.* v. *Lomas & Nettleton Co.,* 125 Conn. 373, 376, 378–79, 5 A.2d 700.

We turn next to the denial of the injunction restraining the defendant Colonial Cemeteries, Inc., from allowing or consenting to the erection of above-ground structures and objects in the future. The trial court made no findings and reached no conclusions relevant to the denial of this injunction. It did, however, deny the plaintiff's claim of law that the restrictive covenant forbids the erection of a mausoleum. Thus, the trial court appears to have predicated its denial of this injunctive relief solely on the belief that the covenant allowed the defendant cemetery to give permission for such structures. We cannot agree that this is the correct interpretation of the restrictive covenant.

The defendants claim that the first clause of the covenant subjects to the grantor's control structures

and objects associated with above-ground inter-
ments, as well as fences and plantings. The list,
however, of structures and objects contained in this
first clause is in fact not so limited. Included also
in this first clause are references to "monument,"
"marker," "tombstone" and "mound." These terms,
viewed in their common and accepted meaning, apply
equally to below-ground interments. See *Katsoff* v.
*Lucertini,* 141 Conn. 74, 77, 103 A.2d 812. "Tomb-
stone" is in fact defined as "an inscribed stone
placed horizontally over a *grave."* (Emphasis
added.) Webster, Third New International Dic-
tionary. That a "grave" involves a below-ground
interment is not merely conceded but in fact asserted
by the defendant cemetery in its brief. This asser-
tion is contained in the defendant's claim that the
second clause, which requires the use of grave
markers lying flush with the ground, prohibits ab-
solutely only above-ground structures memorializing
a below-ground burial. It is obvious, then, that the
construction placed on the restriction by the de-
fendant cemetery leads at best to uncertainty and
ambiguity. For example, under its interpretation,
the defendant cemetery could perhaps choose to
allow a tombstone to be erected pursuant to the first
clause; yet under its construction a tombstone is
absolutely prohibited under the second clause. We
conclude that this interpretation is beyond any rea-
sonable construction of the language.

By contrast, the construction placed on the
covenant by the plaintiff renders the language and
meaning of the covenant unambiguous and certain
on its face. The plaintiff maintains that under the
covenant the approval of the grantor may only be
granted to erect "hedges, plants, trees or flowers,"
all other enumerated above-ground structures and

objects being absolutely prohibited. The second clause, in requiring the use of "bronze tablets or grave markers of uniform size to be specified by the grantor, lying flush with the turf" in place of above-ground family memorials, merely reemphasizes the absolute prohibition against these above-ground structures, which were included among the previously enumerated general list of above-ground structures absolutely prohibited.

We conclude that the covenant is fairly susceptible of only one interpretation, that advocated by the plaintiff. Thus, there is no need to apply additional rules of interpretation, for in determining the effects of a deed or a written contract where the language is fairly susceptible of but one interpretation, the inquiry is not what the parties impliedly intended but what is the intent which is expressed, and that intent must be given effect. *Shorefront Park Improvement Assn., Inc.* v. *King,* 157 Conn. 249, 256, 253 A.2d 29; *Pulver* v. *Mascolo,* 155 Conn. 644, 649, 237 A.2d 97; *Katsoff* v. *Lucertini,* supra; *Roessler* v. *Burwell,* 119 Conn. 289, 295, 176 A. 126; *Patzloff* v. *Kasperovich,* 116 Conn. 440, 442, 165 A. 349; *Hoyt* v. *Ketcham,* 54 Conn. 60, 62, 5 A. 606; 23 Am. Jur. 2d, Deeds, § 161. The intention of the parties, gathered from their words, is gathered not by reading a single clause of the covenant but, as we have done, by reading its entire context. See *B. T. Harris Corporation* v. *Bulova,* 135 Conn. 356, 360, 64 A.2d 542; *City National Bank* v. *Bridgeport,* 109 Conn. 529, 539, 147 A. 181; *H. J. Lewis Oyster Co.* v. *West,* 93 Conn. 518, 523, 107 A. 138; *Loomis* v. *G. F. Heublein & Bro.,* 91 Conn. 146, 150, 99 A. 483. It is only where more than one interpretation is permissible that it is necessary for this court to seek the intent of the doubtful language in the light of

surrounding circumstances presumably considered by the parties. *B. T. Harris Corporation* v. *Bulova, supra,* 361; *Waterbury Trust Co.* v. *G. L. D. Realty Co.,* 124 Conn. 191, 197, 199 A. 106; *Bassett* v. *Pepe,* 94 Conn. 631, 637, 110 A. 56; *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 295, 82 A. 561.

We have long recognized that no court of equity should ever grant an injunction merely because of the fears or apprehensions of the party applying for it, for those fears may exist without any substantial reason. *Nicholson* v. *Connecticut Half-Way House, Inc.,* 153 Conn. 507, 511, 218 A.2d 383; *Brainard* v. *West Hartford,* 140 Conn. 631, 635, 103 A.2d 135; *Goodwin* v. *New York, N.H. & H.R. Co.,* 43 Conn. 494, 500; *Bigelow* v. *Hartford Bridge Co.,* 14 Conn. 565, 582. The defendant cemetery, however, in its brief admits that if a permanent injunction is not issued it is planning to carry on an additional operation—"that of developing the pine grove section as an area for garden crypts." This is sufficient to demonstrate that it is reasonably probable that the defendant cemetery is presently threatening a breach of the covenant so as to entitle the plaintiff to an injunction restraining a future breach of the covenant. *Ginsberg* v. *Mascia,* 149 Conn. 502, 505, 182 A.2d 4; *Holt* v. *Wissinger,* 145 Conn. 106, 116, 139 A.2d 353; *Lampson Lumber Co.* v. *Caporale,* 140 Conn. 679, 685, 102 A.2d 875; *Armstrong* v. *Leverone,* 105 Conn. 464, 472, 136 A. 71. In *Lampson Lumber Co.* v. *Caporale, supra,* we said: "If the named defendant is threatening a breach of the restrictive covenant, there can be no question that the plaintiff is entitled to an injunction restraining the breach, irrespective of whether the damage it will suffer is great or small. *Armstrong* v. *Leverone,* 105 Conn. 464, 472, 136 A. 71."

Where the only reasonable conclusion is that a plaintiff is in equity entitled to an injunction in a given form, it is competent for us to order such an injunction even though the trial court refused it. *Dimmock* v. *New London,* 157 Conn. 9, 19, 245 A.2d 569; *Hammerberg* v. *Leinert,* 132 Conn. 596, 604, 46 A.2d 420. The trial court was in error in unconditionally denying the injunction prohibiting further violations of the covenant.

Under the view that we take of this case as it is presented by the record before us, the plaintiff's additional assignments of error require no discussion.

There is error and the case is remanded with direction that the trial court enter a permanent injunction restraining the defendant cemetery from approving in the future the erection of any man-made structure or object enumerated in the covenant that protrudes or extends above the surface of the ground within the confines of Fairfield Memorial Park.

In this opinion the other judges concurred.