**S. J. ANGLAND, Appellant,**

v.

**John DOE, et al., and University Club, Appellees.**

**No. 14338.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 29, 1958.

Decided Nov. 26, 1958.

Petition for Rehearing Denied Dec. 19, 1958.

S. J. Angland, Washington, D. C., appellant, pro se.

Mr. H. Mason Welch, Washington, D. C., with whom Messrs. J. Harry Welch, J. Joseph Barse, Arthur V. Butler and Walter J. Murphy, Jr., Washington, D. C., were on the brief, for appellees.

Before EDGERTON, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Appellant, an attorney acting pro se, asked the District Court to "declare the rights of the parties." Included, pertinently, in his complaint filed October 18, 1957, was a prayer for an order that he pay his own debt to the Club and that the action of the Club in accepting his resignation be declared void because of the Club's alleged failure "to comply with its own by-laws or at least minimum rules of decency." In addition to the appellee Club, the complaint purported to run against "Defendants John Doe, Richard Roe, and others," all unnamed. Cross motions for summary judgment having been filed, argued and considered, the District Court denied appellant's motion and granted the Club's motion. This appeal followed.

The record shows that, faced with disciplinary action, the appellant had tendered his resignation on January 30, 1951. The Board of Governors accepted the resignation on December 20, 1954, improperly, appellant claimed, for the Club by-laws provided no resignation "shall be accepted until all current dues and indebtedness to the Club shall have been discharged by the resigning member." Clearly the provision was intended to be applied for the benefit of the Club, and hence it might be and here was waived.

Appellant's complaint further showed:

"Plaintiff does not request this Court to determine as to said Club, whether there were ever any violations of said Club's rules or standards. Said Club's By-laws amply provide for such events, as do minimal rules of decency, though the former in much more detail. The Court is only requested to decide that there must always, or particularly in this case, be compliance with minimal rules of decency, if not the said Club's By-laws.

\* \* \* \* \* \*

"None of the action wrongfully taken by the individual [unnamed] defendants was authorized by defendant Club, and no money damages should be assessed against said Club."

We need not expand our references to the appellant's complaint beyond observing that its prolix allegations seem intended to outline his grievance against the unnamed individuals. They are cast as the villains of the piece, whether as members of the Executive Committee or of the Board of Governors, as instigators of a "conspiracy" against appellant, or as persons whose "standards of conduct" were in nowise superior to those of the appellant. In one respect or all such, the "individual defendants" were appellant's targets.[1]

That a member of an incorporated club may not be *expelled* except in conformity with its rules is well established, and one wrongfully expelled may seek relief in equity.[2] The Club's by-laws here provided a series of procedural steps to be followed before a member might be expelled. Had an expulsion occurred without affording the appellant the procedural protections of the by-laws, a very different situation would have been presented. The appellant, as a former member, was not expelled. He resigned, and the question therefore turns on the effect to be given to his resignation. It well might be argued that appellant by his resignation waived the benefits of the expulsion by-law.

Militating against that conclusion is the possibility that the Club's acceptance constituted an act of bad faith. It is clear that appellant, rather than undergo a hearing on the 1951 charges, tendered his undated resignation. The Club advised appellant his letter would "be held on file for acceptance in the event of any repetition." Appellant at no time with-

---

1. The complaint wholly fails to conform to the requirements of Fed.R.Civ.P. 8, 28 U.S.C. which calls for a short and plain statement of the pleader's claim, in simple, concise, and direct averments.

Cf. Avin v. Verta, D.C.Mun.App.1954, 106 A.2d 145.

2. Berrien v. Pollitzer, 1947, 83 U.S.App. D.C. 23, 165 F.2d 21.

drew his resignation nor did he seek a hearing. He left the letter "on file for nearly four years," he alleged, "without giving it a thought." He urges it "was never the custom prior to 1954 for said Club to accept even unconditional resignations that were over two years old," and therefore his undated resignation was "dead," as he puts it. Involved, accordingly, is a problem of Club policy.

■ This jurisdiction long since recognized that courts may not interfere unless a determination by the club's constituted authorities is *ultra vires*, fraudulent, or made contrary to good faith. In United States ex rel. De Yturbide v. Metropolitan Club[3] the Club's governing body was concerned with whether or not the member's conduct was such as made it "unbecoming a gentleman" within the meaning of a club by-law. A question of club policy was thus presented. The member, in court, moved for a directed verdict, but his request was refused. On appeal it was held the trial court's refusal was proper since, by his motion, the former member conceded the truth of all the evidence against him and all deductions from the evidence that could reasonably be made, including the fact of good faith on the part of the Board of Governors in arriving at their conclusion.

■ Here the appellant moved for summary judgment in his favor.[4] To prevail, he must show that the Board of Governors lacked authority to accept his resignation, or that it acted in fraud of his rights or in bad faith. The Club insists he has failed in each such respect.

"The courts can not sit as appellate tribunals to review the judgments of the corporate authorities in such cases. The parties concerned having constituted their own domestic tribunal for the trial and determination of questions of alleged violation of purely corporate duty, they must abide such determination, unless the authority be transcended, or there be fraud or bad faith shown." [5]

Surely it is not arguable here that the Club's "corporate authorities" acted beyond their powers. There is no showing whatever that the Club's policy may not be changed by its governing body or that there was a fraud worked upon the appellant. The most that can be argued is that it was unreasonable—and hence not in good faith—that the Club accepted appellant's "dead" resignation more than three years after it had been tendered.

Even if we were to say that this policy decision might have been the subject of consideration by a court of equity,[6] there was no issue properly so presented to the District Court. Moreover, appellant expressly asked that no damages be assessed against the Club. He made it clear that the actions of the unnamed defendants had not been authorized by the Club, and so alleged. He did not seek reinstatement, indeed, he wrote to the Club on April 23, 1956: "I have no desire to become an active member of the Club again, I could not do so even if the Board requested me * * * to come back." [7]

■ It would appear that appellant here has no just cause to complain if both the Club and the District Court have taken him at his word. The court should not be asked to render advisory opinions.[8] "A declaratory judgment, like

---

3. 1897, 11 App.D.C. 180.

4. Compare Professor Moore's observation:
   "The theory underlying a motion for summary judgment is, however, substantially the same as that underlying a motion for directed verdict." 6 Moore, Federal Practice 2032 (2d ed. 1953).

5. United States ex rel. De Yturbide v. Metropolitan Club, supra note 3, 11 App. D.C. at 197.

6. Cf. Berrien v. Pollitzer, supra note 2.

7. We purposefully omit detailed reference to the series of disciplinary actions which preceded an unflattering episode said to have occurred at the Club on the night of November 27, 1954.

8. Cf. United Public Workers v. Mitchell, 1947, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754.

other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." [9] We can not say the court erred in entering judgment for the defendant Club.

Affirmed.

EDGERTON, Circuit Judge, dissents.

9. Eccles v. Peoples Bank, 1948, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784; Aetna Life Ins. Co. v. Haworth, 1937, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed.

617. Appellant here had invoked the court's ruling in reliance upon 28 U.S.C. § 2201.