## Anders R. Sterner *v.* Saugatuck Harbor Yacht Club, Inc., et al.

Speziale, C. J., Peters, Healey, Parskey and Armentano, Js.

Argued May 6—decision released September 28, 1982

*Lester J. Tanner* and *Lawrence S. Yee,* of the New York bar, pro hac vice, with whom was *Edmund F. Schmidt,* for the appellant (plaintiff).

*Jay H. Sandak,* for the appellees (defendants).

Speziale, C. J. In this action, the plaintiff, Anders R. Sterner, seeks reinstatement as a member in the defendant Saugatuck Harbor Yacht Club,

Inc. The plaintiff had been expelled by the defendant as a result of the following incident: At 6:30 one morning, the plaintiff left his sloop and walked along the dock of his yacht club toward shore, to shower at the club and then to catch the morning train to his New York law office. When he reached the ramp connecting the dock to the shore, he stopped because a truck parked on the ramp blocked his way. He asked the owner of the truck, Hunter Muller, if he would move his truck. Hunter Muller was a junior member of the club and the son of Frank Muller, a member of the board of governors of the club. Getting no action, the plaintiff climbed over the truck, stepping in the bed of the truck, on the cab, the hood, and thence to shore. Hunter Muller protested and later made a claim for damage to his truck; the plaintiff offered a lesser amount in settlement. The dispute was not resolved. The board of governors of the club, acting on its own motion in response to news of this incident, notified the plaintiff to appear and be heard on whether his actions constituted conduct detrimental to the welfare, interest or character of the club within the meaning of the bylaws[1] warranting sanction[2] by the board. The plaintiff made a countercharge under the bylaws[3] against the Mullers.

---

[1] Article XVIII, § 2 of the bylaws provides: "The Board of Governors, where it considers the conduct of a member to be detrimental to the welfare, interest or character of the Club, may cause a statement of such charge, together with notice of not less than ten (10) days of the time and place where the Board shall meet for the consideration thereof, to be mailed to the member charged, at his address as it appears on the records of the Club."

[2] Article XVIII, § 6 of the bylaws provides: "If the Board shall be satisfied of the truth of the charge or charges, the member may, by vote of a majority of the whole of said Board, be censured, suspended for a period of not exceeding one (1) year, or expelled."

[3] Article XVIII, § 1 of the bylaws provides: "If any member of the Club shall be charged in writing by any other member or mem-

At a meeting attended by the plaintiff, Hunter Muller, by fourteen governors (Frank Muller was present but recused himself) and by various character witnesses, the board of governors considered the conduct of the members. Deliberating in executive session, the board (1) dismissed the plaintiff's countercharge against the Mullers, concluding that their conduct did not constitute "conduct injurious to the character or welfare of the Club"; (2) found that the plaintiff's conduct did constitute conduct "detrimental to the welfare, interest or character of the Club"; and (3) voted to expel the plaintiff from the club. The plaintiff instituted the present proceeding to challenge the board's action, seeking, inter alia, a writ of mandamus and other relief to order reinstatement. The trial court held that mandamus does not lie for reinstatement of a member in a private club, and denied the plaintiff's application for relief. From that judgment the plaintiff has appealed. We conclude that the trial court erred because the plaintiff is entitled to injunctive relief.

" 'The writ of mandamus is an extraordinary remedy to be applied only under exceptional conditions, and is not to be extended beyond its well-established limits.' *Lahiff* v. *St. Joseph's Total Abstinence [and Benevolent] Soc.,* 76 Conn. 648, 651, 57 A. 692 [1904]. Mandamus neither gives nor defines rights which one does not already have. It commands the performance of a duty. It acts upon the request of one who has a complete and

bers with conduct injurious to the character or welfare of the Club, the Board of Governors shall thereupon cause a statement of such charge, together with notice of not less than ten (10) days of the time and place where the Board shall meet for the consideration thereof, to be mailed to the member charged, by certified or registered mail at his address as it appears on the records of the Club."

immediate legal right; it cannot and does not act upon a doubtful and contested right. It is an expeditious remedy to protect a clear legal right. *Boyko* v. *Weiss,* 147 Conn. 183, 186, 158 A.2d 253 [1960]. 'The essential conditions without which the writ will not be issued to enforce the performance of a ministerial duty are: (1) that the party against whom the writ is sought must be under an obligation imposed by law to perform some such duty, that is, a duty in respect to the performance of which he may not exercise any discretion; (2) that the party applying for the writ has a clear legal right to have the duty performed; and (3) that there is no other sufficient remedy.' *Bassett* v. *Atwater,* 65 Conn. 355, 360, 32 A. 937 [1895]." *Milford Education Assn.* v. *Board of Education,* 167 Conn. 513, 518, 356 A.2d 109 (1975).

The writ of mandamus that the plaintiff seeks has been recognized by our decisions. In *Lahiff* v. *St. Joseph's Total Abstinence and Benevolent Society,* supra, 652, the court noted that mandamus "is often an appropriate remedy for the reinstatement of a member of an incorporated benevolent or social society, who has been unlawfully and unreasonably deprived of the enjoyment of the rights and privileges of membership in such societies. . . . Such associations, although private corporations, are chartered by the State, and enjoy privileges and exercise powers expressly granted by the State, and for that reason the duties devolving upon them are regarded as of a public character, the performance of which may properly be compelled by writ of mandamus." See also *Bassett* v. *Atwater,* 65 Conn. 355, 32 A. 937 (1895); cf. General Statutes § 52-487. But for mandamus to lie, the plaintiff must have no other adequate remedy. 3 Blackstone,

Commentaries *110; High, Extraordinary Legal Remedies (1874) §§ 277, 283, 289; II Stephenson, Conn. Civ. Proc. § 261.

Although traditionally mandamus lay where there was no adequate remedy at law; see, e.g., *Bassett v. Atwater,* supra, 363–64; our present rule is that "mandamus will not lie where the aggrieved party has an adequate remedy either at law or *in equity. Milford Education Assn.* v. *Board of Education,* supra, 519; *State ex rel. Howard* v. *Hartford Street Ry. Co.,* 76 Conn. 174, 184, 56 A. 506 (1903)." (Emphasis added.) *Monroe* v. *Middlebury Conservation Commission,* 187 Conn. 476, 480, 447 A.2d 1 (1982). This is such a case because the plaintiff has an adequate remedy in equity.

The defendant, as a nonstock corporation, has those powers permitted by the nonstock corporation statutes, its certificate of incorporation, and its bylaws. Where the corporation acts in excess of those powers, those acts may be enjoined by a member of the corporation. General Statutes § 33-429; see *Cross* v. *Midtown Club, Inc.,* 33 Conn. Sup. 150, 365 A.2d 1227 (1976). General Statutes § 33-459 (a), concerning nonstock corporations, requires that "[m]embership shall be governed by such rules of admission, retention, withdrawal and expulsion as the by-laws shall prescribe, provided all such by-laws shall be *reasonable,* germane to the purpose of the corporation and equally enforced as to all members." (Emphasis added.) The provision "adopts common law standards of fair play and forms the basis for bylaws to be challenged by a member where they are not reasonable . . . ." (Footnote omitted.) Cross, Corporation Law in Connecticut (1972) p. 233; see *Loubat* v. *Le Roy,* 47 N.Y. Sup. Ct. (40 Hun.) 546 (1886).

The defendant has provided for expulsion of members in its bylaws. The ground for expulsion, conduct "detrimental to the welfare, interest or character of the Club," although susceptible of a range of application, may not be given unreasonable application. For example, the trial court posed the following hypothetical conduct to the defendant: "Suppose Mr. Sterner went walking along one of these ramps [docks] one day with yellow shoes on, and somebody spied him and said, 'that's detrimental to the interests of the club. We're going to bring you up on charges.' And they conducted a hearing and they expel him because he was wearing yellow shoes. You say they could do that. That's none of the court's business?"[4] To which the defendant, by its counsel, answered: "Yes, Your Honor." The trial court apparently agreed, and stated it was powerless to grant relief to the plaintiff.

The trial court erred because the defendant's answer is not the law. Membership in the club is required by statute to be governed by bylaws that are reasonable. Bylaws reasonable on their face may not be unreasonably applied. Though a bylaw should provide a member with notice and an opportunity to be heard, the club may not apply such bylaw to expel a member unreasonably, e.g., merely "because he was wearing yellow shoes." The statutory requirement of reasonable bylaws requires a hearing that is meaningful and a sanction that is reasonable; where a corporation acts contrary to those requirements its action may be enjoined.

The trial court agreed with the plaintiff that the defendant's application of its bylaws was unreason-

---

[4] The example is not wholly hypothetical: the plaintiff, on the morning in question, was wearing yellow shoes.

able: "The court finds it incredible that the board of governors allowed itself to become involved in a matter concerning a private disagreement between members over an amount of damages. . . . Once having been involved, it appears ever more astonishing that anything more than mild censure, or at most, a short period of suspension, should have been considered by way of resolution." In effect, the trial court held that the defendant's action was not only unreasonable, but also arbitrary, capricious, and an abuse of discretion. We agree.

Although in the ordinary case courts should be reluctant to intervene in the affairs of private clubs; see *Von Arx* v. *San Francisco Gruetli Verein,* 113 Cal. 377, 379, 45 P. 685 (1896); this is not the ordinary case. The hearing afforded the plaintiff was not meaningful and the sanction imposed was not reasonable. Therefore, the trial court erred in concluding that there was no remedy for the defendant's unreasonable conduct. Because the defendant's conduct was in violation of General Statutes § 33-459 (a), an injunction will lie to reinstate the plaintiff in the club.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff for injunctive relief ordering reinstatement of the plaintiff as a member of the Saugatuck Harbor Yacht Club, Inc.

In this opinion PARSKEY and ARMENTANO, Js., concurred.

PETERS, J. (concurring). I concur that the trial court was in error in its judgment for the defendant. I agree that the plaintiff has stated a cause of action

that may entitle him to equitable relief. But I am not persuaded that, on the present record, the plaintiff has as yet demonstrated his entitlement to a judgment on his own behalf.

The majority opinion concludes that the plaintiff was not afforded a meaningful hearing. I have difficulty in identifying in what way the hearing was defective. The hearing did not charge the plaintiff "with wearing yellow shoes." Whatever the utility of the "yellow shoe" discussion at the trial, I submit, with deference, that the "yellow shoe" issue is in fact a red herring. The hearing did charge that the plaintiff's conduct in the incident on the club dock constituted a violation of a club bylaw condemning conduct "detrimental to the welfare, interest or character of the Club." The plaintiff has not argued that this bylaw is on its face improper or unreasonable, or that the hearing held pursuant thereto deprived him of notice or of a fair opportunity to be heard; in short there is no direct allegation of a lack of procedural due process.

As I read the plaintiff's briefs and the majority opinion, the hearing was improper because it led to the imposition of a sanction, expulsion, that was disproportionate to the charge filed against the plaintiff. Indeed, the majority opinion quotes the trial court's memorandum of decision which suggests that judicial opprobrium would not have attended a sanction of censure or of suspension. It is not clear to me how an unreasonable sanction is, in and of itself, evidence of the absence of a meaningful hearing. If a similar hearing, resulting in a lesser sanction, would not have violated our statutes, I do not see why this hearing should be characterized as "not meaningful." Suppose that

the club had promulgated a bylaw uniformly requiring the expulsion of any member who damaged the property of any other member. I wonder whether we would have found fault with a hearing, otherwise unimpeached, to enforce such a bylaw?[1]

It does seem to me, however, that another portion of General Statutes § 33-459 (a) may well afford the plaintiff the relief he seeks. The statute requires, inter alia, that bylaws be "equally enforced as to all members." It may well be that the disparity in treatment between the sanction imposed upon the plaintiff and the dismissal of the charges against Hunter Muller would furnish evidence of the defendant's violation of this provision. The plaintiff at trial offered other evidence of disparate treatment as well. The trial court never reached this issue because it decided the case on the ground that mandamus did not lie. I would therefore find error and remand for a new trial.

ARTHUR H. HEALEY, J. (concurring). I concur in the result. The plaintiff's brief specifically points out that the bylaws are not unreasonable *per se* but does attack their application to him in expelling him from the defendant club.[1] "[E]ven though the

[1] The standard for review that is suggested by the concurring opinion of Justice Healey is one to which I might well subscribe in a case which provided an appropriate evidentiary base for its application. On the record before us, however, we have a trial court's memorandum of decision that concluded only that mandamus was an improper remedy. At best, the plaintiff ambiguously alleged bad faith; there are no allegations of fraud whatsoever. In this state of the pleadings, I do not see how this memorandum of decision can reasonably be interpreted as finding, by convincing proof, that the plaintiff is entitled to relief on this theory.

[1] The plaintiff sought mandamus and equitable relief. As to the latter he alleged the lack of an adequate remedy at law and irreparable injury (including "serious and unjustified injury to his social and professional reputation"). See *Theurkauf* v. *Miller*, 153 Conn.

rules themselves may be unobjectionable, the acts of members of an association in enforcing the rules of the organization may be unreasonable, oppressive, and wrongful, and call for judicial interference." 6 Am. Jur. 2d, Associations and Clubs § 8. Some decisional law has been said "[to] establish the common law principle that whenever a private association is legally required to refrain from arbitrary action, the association's action must be both substantively rational and procedurally fair." See *Pinsker* v. *Pacific Coast Society of Orthodontists,* 12 Cal. 3d 541, 550, 526 P.2d 253 (1974). Where an expelled member "can show improper treatment, the courts can and will grant damages or even order his reinstatement." Oleck, Non-Profit Corporations and Associations (1956) § 24. We recognize today that in the ordinary case, courts should be reluctant to intervene in the affairs of private clubs; but this is not the ordinary case. The parameters expressed by the Florida courts merit attention where they state: "We agree that the courts should leave to the members of a private social club or to the proper board to which the members have lawfully delegated that power, the right to determine whether the action of a member has been such that, in the opinion of such Board, it would interfere with the pleasant, friendly and congenial social relationship between the members. *In the absence of a clear allegation and convincing proof,* if the case reaches that stage, *of fraud or bad faith, the action* of the members or duly delegated board *should not be reviewed by the courts."* (Emphasis added.) *State*

159, 161, 214 A.2d 834 (1965). In addition, the complaint specifically alleges that the defendant's action in expelling him was "unnecessary, unwarranted and unjustly severe in relation to the offense charged . . . in clear contravention of the By-Laws . . . and arbitrary and capricious."

*of Florida ex rel. Barfield* v. *Florida Yacht Club,* 106 So. 2d 207, 211 (Fla. App. 1958); see *McCune* v. *Wilson,* 237 So. 2d 169, 171 (Fla. 1970).

One noted commentator, Professor Zechariah Chafee, Jr., in addressing the internal affairs of associations, said: "Denial of a remedy at law to the expelled member should not prevent him from obtaining equitable relief." Chafee, "The Internal Affairs of Associations Not for Profit," 43 Harv. L. Rev. 993, 1013 (1930). "Equity courts are well endowed with tools for shaping association behavior. The most familiar and powerful is the injunction, prohibitive or mandatory, which may be directed against all members of a defendant association. . . ." Note, "Judicial Control of Actions of Private Associations," 76 Harv. L. Rev. 983, 1095 (1963). "That a member of an incorporated club may not be *expelled* except in conformity with its rules is well established, and one wrongfully expelled may seek relief in equity. . . . This jurisdiction long since recognized that courts may not interfere unless a determination by the club's constituted authorities is *ultra vires,* fraudulent or made contrary to good faith." (Emphasis in original.) *Angland* v. *Doe,* 263 F.2d 266, 267–68 (D.C. Cir. 1958).

"The granting of injunctive relief in each case is within the sound discretion of the trial court exercised according to recognized principles of equity. *Dimmock* v. *New London,* 157 Conn. 9, 18, 245 A.2d 569 [1968]; *Waterford* v. *Grabner,* 155 Conn. 431, 434, 232 A.2d 481 [1967]; *Lebanon* v. *Woods,* 153 Conn. 182, 195, 215 A.2d 112 [1965]; *Holt* v. *Wissinger,* 145 Conn. 106, 113, 139 A.2d 353 [1958]. . . . In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result

from interference by injunction. . . ." *Moore* v. *Serafin,* 163 Conn. 1, 6, 301 A.2d 238 (1972).

"It is said that every wrong has its remedy; so it may be said that every case requiring equitable relief has its corresponding mode of redress." *Chappell* v. *Jardine,* 51 Conn. 64, 69, (1883); see *Sears* v. *Hotchkiss,* 25 Conn. 170 (1856); 2 Pomeroy, Equity Jurisprudence (5th Ed.) §§ 423, 424; 27 Am. Jur. 2d, Equity § 120. The unreasonable application of a reasonable bylaw lends itself peculiarly to the shaping of the equitable relief we order today.