## THOMAS DEBERNARDO ET AL. *v.* PINEWOOD LAKE ASSOCIATION, INC.*

Superior Court                                     File No. CV980149841S
Complex Litigation Docket at Waterbury

Memorandum filed March 11, 1999

---

* An appeal to the Appellate Court by the defendant was filed on March 31, 1999; Appellate Court No. AC 19450. On October 14, 1999, the appeal was withdrawn.

*Mihaly & Kascak,* for the plaintiffs.

*Halloran & Sage,* for the defendants.

# I

# INTRODUCTION

HODGSON, J. The plaintiffs in the above captioned case challenge the validity of their expulsion from membership in the defendant, Pinewood Lake Association, Inc. (association), which restricts use of the lake on which the plaintiffs' cottages are located to association members. Specifically, the plaintiffs claim that the bylaw on which their expulsion was based is invalid because it is ultra vires to the purposes of the association and that it was selectively and discriminatorily enforced to deprive them of access to the lake. The plaintiffs are Gloria DeBernardo, owner of a cottage at 70 West Lake Road in Trumbull, Paul Jancski, owner of a cottage at 72 West Lake Road and his wife, Ellen Jancski. The named plaintiff, Thomas DeBernardo, was divorced from the plaintiff Gloria DeBernardo at the time of trial and no longer holds an interest in any property affected by the defendant's actions and bylaws. His claim was dismissed by this court for lack of standing at the close of the plaintiffs' evidence.

The plaintiffs seek a declaratory judgment invalidating their ejectment from membership and the bylaw relied upon by the association in ejecting them from membership. The plaintiffs further seek injunctive relief against efforts by the defendant to deprive them of the rights of association membership based on their occupancy of their cottages between November 1 and April 1 of each year. The court, *Thim, J.,* issued an order of notice to persons having an interest in the

matter in controversy and the court finds that the plaintiffs have complied with the requirements of Judge Thim's order. No motions to intervene were filed.

The defendant has pleaded as a special defense the doctrine of laches, claiming that the plaintiffs inexcusably delayed bringing their action, causing prejudice to the defendant.

## II

## FINDINGS OF FACT

The court finds the facts to be as follows. In the 1930s the only development on Pinewood Lake (formerly known as Upper Bunnell's Pond) in Trumbull was a country retreat colony consisting of lakefront cottages, a lodge, a billiard hall and a clubhouse used primarily by families from New York, who arrived mostly by train. In 1935 or 1936 the property, known as the Pinewood Country Club, went into bankruptcy. The First National Bank and Trust Company of Bridgeport managed the property in bankruptcy and hired a developer, the Gerth Company, to develop it and market the existing cottages and undeveloped lots which ringed the lake. The deeds by which cottages and lots were originally conveyed by the bank to buyers are all substantially the same with regard to reservations of rights to the grantor, restrictions on the use of the property conveyed and conditions on access to the lake. The deeds in the chains of title of Gloria DeBernardo and Paul Jancski that reflect the original transfer from the bank to a grantee in 1943 contain certain provisions, set forth subsequently, which the parties have stipulated match the provisions in the deeds from the bank to other purchasers of the cottages and lots in the development plan formulated by the Gerth Company.

The only interest reserved by the bank in the property conveyed to the plaintiffs' predecessors in interest was

the right for other owners to continue to be served by existing electric light conduits, water mains and sewer disposal systems located in whole or in part on the devised premises and to enter onto the premises to inspect, repair or replace such facilities.

The deeds stated that conveyance was "subject to the following conditions, restrictions and covenants running with the land and binding upon the GRANTEE, his heirs, executors, administrators and assigns:

"1. Subject to zoning and building regulations and restriction established by the Town of Trumbull;

"2. No excavation shall be made upon said premises except for the purpose of building thereon, and only at the time when building operations are commenced;

"3. No fence or barrier shall be erected on said premises except for ornamental purposes, and not until a dwelling house has been erected thereon;

"4. The GRANTEE shall acquire no riparian rights or easements of any description in or to Pinewood Lake (sometimes known as Upper Bunnell's Pond) or any stream tributary thereto. The GRANTOR however, hereby agrees to accord to the GRANTEE in common with the GRANTOR and others to whom the GRANTOR may accord similar privileges the privilege to use under such rules, regulations, and restrictions as may from time to time be established by the GRANTOR, said Pinewood Lake, together with the retaining dams and such other lands and beaches as may from time to time be designated by the GRANTOR for boating, bathing, fishing, skating and other sporting and recreational uses, but without any warranty by the GRANTOR with respect to the continued existence of said lake. The privilege to be so accorded shall be, and shall be so considered and construed, as a personal license to the grantee, the members of his household and his bona

fide temporary house guests and shall not be subject to conveyance or assignment without the written consent of the GRANTOR. The aforesaid privilege shall be exercised solely at the risk of the GRANTEE and shall cease and terminate immediately upon the conveyance of said lake, dams, beaches and other lands, including roads and rights-of-way, to an association or corporation of plot-owners to be organized by the GRANTOR of which, upon request, the GRANTEE agrees to become a member. The GRANTOR assures the GRANTEE of his eligibility to membership in the association or corporation above mentioned subject, however, to such rules, regulations and restrictions as may be established by or on behalf of said association or corporation.

"5. The GRANTEE for himself, his heirs, executors, administrators and assigns hereby covenants with the GRANTOR (hereinafter meaning the GRANTOR or its successors, or any subdivider to whom it may convey all or substantially all of its then remaining land in the vicinity of the premises hereby conveyed) that no building or structure shall be erected on the premises hereby conveyed other than a dwelling house of not more than two stories in height, which dwelling shall be designed and used for the occupancy of not more than one family and, for use in connection with said dwelling, a garage to accommodate not more than three automobiles; that no building or structure shall be erected on said premises, the location, plans, specifications, exterior finish, plumbing and sewage disposal systems of which have not been first approved in writing by the GRANTOR, that said premises shall be used only for residential and recreational purposes of the licenses as above described, and for or in pursuance of or in connection with no commercial, business or manufacturing purpose whatsoever, and particularly that said premises shall not be occupied in such manner as to be obnoxious to the GRANTOR, or persons deriving title

through the grantor, or so as to render said premises undesirable in a private residential neighborhood; that no fence, wall, hedge, sign, tent, trailer, or like structure or object shall be erected or maintained on said premises without the written consent of the GRANTOR; that no poultry, cattle or swine shall be kept or maintained on said premises. The doctrine of implied covenants and restrictions shall not apply to lands of the GRANTOR not conveyed hereby. The foregoing shall be construed as covenants attached to and running with said land hereby conveyed until January 1, 1970.

"6. [Subject to taxes on the grand list.]"

The deeds by which the plaintiffs acquired their properties thus did not convey to the plaintiffs any interest in the lake on which the plaintiffs' properties are located. The evidence did not establish the date when the defendant association came into existence; however, a document entitled "Articles of Association of the Pinewood Lake Association, Inc.," and dated August 1, 1944, was entered on the land records of the town of Trumbull. That filing sets forth the purposes of the association in the following text:

"Article II. The purposes for which said corporation is formed are the following, to wit:

"To further and promote cooperation in all matters affecting the interest and protection of owners of land in the immediate neighborhood of Upper Bunnell's Pond, also known as Pinewood Lake in the Town of Trumbull;

"To purchase, lease, or otherwise acquire, hold, develop, improve, repair and maintain land under and adjacent to the waters of said Upper Bunnell's Pond, otherwise known as Pinewood Lake and streams tributary thereto and dams impounding such waters or any of them, and any and all riparian rights or easements in such lands or waters;

"To purchase, lease, or otherwise acquire, to sell or otherwise dispose of, to lay out, construct, develop, maintain, improve and operate roadways, walks, gardens, parks, lakes, ponds or other waters, buildings or portions thereof, wharves, piers and other structures;

"For the benefit of its members and their guests, to maintain and operate club houses or rooms, dining halls or restaurants, to acquire, maintain, sell or rent recreational facilities and equipment and to provide and promote lectures, exhibitions, entertainment and other affairs of a social or instructive character;

"In aid of the foregoing purposes, to lay dues and assessments on its members, and to do all other things lawful, necessary and appropriate to effect the same."

By a deed dated September 28, 1948, the bank quitclaimed to the association its interest in Pinewood Lake itself. That deed contains no reference to the provisions of the deeds issued to buyers of cottages and undeveloped lots concerning use of the lake.

The warranty deed by which Paul Jancski acquired his cottage and lot at 72 West Lake Road on May 15, 1972, contained the provisions previously set forth, as did the deed by which Gloria DeBernardo, formerly Gloria Bradford, acquired her cottage and lot at 70 West Lake Road on July 18, 1985. Neither Jancski nor DeBernardo inspected the bylaws of the association before completing their purchases, however, they were advised by the real estate brokers involved in the purchases that the association's position would be that they could not occupy the cottages in the winter.

The cottages purchased by the plaintiffs were two of the twenty-three original cottages from the original development of the Pinewood Lake Country Club described previously. Purchasers of the other lots built

houses on those lots over the years. There are now over 214 separate properties in the area developed by the Gerth Company. The lots on which the original cottages are built are substantially smaller than the other lots laid out in that development plan, however, all but twenty-nine properties fail to conform to the zoning requirements as to lot size, setbacks, and the like.

Soon after each of the plaintiffs began occupying their cottages, Fred Radford, the membership chairman of the association for many of the years since he moved to Pinewood Lake in 1959, visited them and asked them to join the association. Radford informed the plaintiffs that among the association's bylaws was a provision that prohibited them from occupying their cottages between November 1 and April 1 of each year. In 1991, Gloria DeBernardo stayed on in her cottage after November 1. She was suspended, provided with a hearing, and expelled from membership in the association on January 2, 1992. That same autumn, Paul Jancski and Ellen Jancski allowed their grown daughter to occupy their cottage two nights a week after November 1 as a convenience, since she was working in the area. The association suspended them, provided them with a hearing and ejected them from membership on January 2, 1992. The effect of the termination of the plaintiffs' memberships is that the plaintiffs and their guests cannot use association property, including the lake. While the plaintiffs continue to have views of the lake, they have had no access to it for swimming, boating, or any other purpose, since the termination of their memberships.

The plaintiffs commenced this action on August 23, 1993.

The bylaw invoked by the association as the reason for terminating the plaintiffs' memberships is article 5, § 3, of the version of the bylaws enacted in 1973 that

was in effect in 1991 and 1992. That provision is as follows: "Each Owner Member owning non-conforming real estate at Pinewood Lake shall comply in full with the regulations regarding non-conforming use as specified in the Zoning Regulations, adopted by the Town of Trumbull, Connecticut. Non-conforming property may be occupied only during the period between April 1st through November 1st in any one year."

In 1972, when Paul Jancski bought his cottage, bylaws enacted in 1955 were in effect. Those bylaws provided, at article 5, § 3, that: "Each Owner Member owning non-conforming real estate at Pinewood Lake shall comply in full with the regulations regarding non-conforming use as specified in the Zoning Regulations, adopted by the Town of Trumbull, Connecticut."

Both versions of the bylaws provide that membership may be terminated for violation of any provision of the bylaws, after an opportunity to be heard concerning the alleged violation.

The zoning regulations in effect in the town of Trumbull at the time the plaintiffs' membership in the association was terminated identify the permitted uses for property in the area for which membership in the association is available. The parties stipulated that in that area, only residential use is permitted, and business uses are not permitted except for "customary home occupations: such as dressmaking, millinery, hairdressing or manicuring, carried on by a resident occupant, with the assistance of not more than two employees regularly engaged . . . provided there is no display of products or service visible outside of residence."

Section 3 of the zoning regulations titled "Nonconforming Uses," differentiates between nonconforming buildings and nonconforming uses of property, and they provide that both may be continued but not expanded

or resumed after discontinuance, with certain exceptions not applicable to the issues presented in this case. No provision of the zoning regulations of the town of Trumbull contains any specific reference to lakeside cottages nor does any town zoning regulation specifically restrict use of any kind of residence to any particular dates during the year.

No evidence was presented to the effect that the zoning enforcement officer of the town of Trumbull ever issued any order to the plaintiffs that winter occupancy of their cottages violated the zoning ordinances.

Ellen Jancski testified that she and her family had used their cottage and stayed overnight in it on numerous occasions in the winters from 1972 to 1991 to celebrate holidays, skate on the lake, or relax. Steven Bombero, who grew up in the area and who worked with his father on roads and excavation projects in the Pinewood Lake development during the 1940s, testified that the predecessors in interest of the Jancski property had lived in the cottage from time to time in the winter. No evidence concerning winter use was offered on behalf of Gloria DeBernardo, who testified that from the time she bought her cottage in 1985 until 1991, she had used the cottage only between April 1 and November 1.

## III

## ENFORCEABILITY OF BYLAW LIMITING OCCUPANCY PERIOD

The precise claim that the plaintiffs make in their complaint is that the termination of their membership in the association, and hence the termination of their rights as members, "was illegal, arbitrary, discriminatory, ultra vires, contrary to the defendant's charter, and in violation of their duties . . . as expressly contained and set forth in Exhibits A, B, C, D, E, F, G and

H. (Deeds to the plaintiffs and other grantees' property and bylaws of the association in effect at various times)." The plaintiffs also claim that the termination of their memberships was discriminatory because the association has not suspended or terminated the memberships of members who are making use of their properties for business purposes in nonconformity with the Trumbull town zoning regulations.

## A

### Germaneness/Ultra Vires

Connecticut's statutes governing the conduct of nonstock corporations, which the defendant concedes apply to it, provide under General Statutes § 33-1056 (a) that: "Membership shall be governed by such rules of admission, retention, withdrawal and expulsion as the bylaws shall prescribe, provided all such bylaws shall be reasonable, germane to the purposes of the corporation, and equally enforced as to all members."

The plaintiffs have not, in their complaint, challenged the bylaw under which they were expelled on grounds of reasonableness, but only on claims of ultra vires enactment (that is, that the bylaw providing for expulsion from membership for winter use of their property is not germane to the association's purposes as set forth in the articles stating its corporate purposes), and of failure to enforce it equally as to all members.

As the Connecticut Supreme Court observed in *Sterner* v. *Saugatuck Harbor Yacht Club, Inc.*, 188 Conn. 531, 535, 450 A.2d 369 (1982), "a nonstock corporation, has those powers permitted by the nonstock corporation statutes, its certificate of incorporation, and its bylaws. Where the corporation acts in excess of those powers, those acts may be enjoined by a member of the corporation."

Section 33-1056 and its predecessor, General Statutes § 33-459, have been infrequently construed by Connecticut courts. It has been held, however, that where an association's charter does not declare that its purpose is, broadly, to engage in "any lawful activity," the limits of the actual purposes stated in its charter document will be enforced, subject to exercise of the implied power to exercise those legal powers necessary or convenient to effect such stated purposes. *Cross* v. *Midtown Club, Inc.*, 33 Conn. Sup. 150, 154–55, 365 A.2d 1227 (1976). Corporate purposes not stated will not, however, be implied. Id.

The only potentially applicable stated corporate purpose contained in the text of the defendant's articles, previously set forth, is the first: "To further and promote cooperation in all matters affecting the interest and protection of owners of land in the immediate neighborhood of Upper Bunnell's Pond also known as Pinewood Lake, in the Town of Trumbull."

The provision of the bylaws banning some members of the association from occupying their cottages between November 1 and April 1 is an enforceable bylaw only if it is germane to the accomplishment of that corporate purpose. Such an inquiry necessitates an analysis of the manner in which the challenged provision is claimed to accomplish the purpose of furthering and promoting "cooperation in all matters affecting the interest and protection of owners of land in the immediate neighborhood" of Pinewood Lake. Surprisingly, the record is devoid of any evidence that would supply an answer to that question. Radford, the association's only witness, did not testify as to any manner in which prohibiting winter occupancy of the cottages of some landowners achieved the corporate purpose previously quoted. His position was simply that expulsion was warranted because the seasonal limitation had been enacted in a bylaw:

"Q. What is it about the summer cottages that the Jancskis and the DeBernardos and all those other poor people own that's objectionable to the Pinewood Lake Association for occupancy between November and April?

"A. What is objectionable about it is that it's prohibited in the bylaws.

"Q. And why is it prohibited?

"A. It's always been prohibited.

"Q. And why has it always been prohibited?

"A. I wasn't around in 1947, sir. It's always been prohibited. You take every one of these bylaws, all the way through all the revisions, everything, they are all proscribed for occupancy.

"Q. Well, I'm not going to argue with you about what the bylaws say, but I would like to know what's the problem with occupying those units in the winter?

"A. It's prohibited by the bylaws. I don't know— for some reason, maybe I'm not understanding your question, but, they are prohibited by the bylaws and, therefore, you can't occupy them."

This witness acknowledged that the other lake cottages other than the original twenty-three at the south end of the lake are not subject by the association to any restrictions on occupancy during the winter.

The record is devoid of any evidence that would explain how a limitation on occupancy by some, but not all, property owners serves the corporate purpose previously quoted. In its brief, the association mentions a court ruling, *Weyls* v. *Zoning Board of Appeals*, 161 Conn. 516, 290 A.2d 350 (1971), in which the Trumbull zoning board was upheld on appeal for ordering a property owner at Pinewood Lake to cease and desist from

expanding the use of a cottage that had been occupied solely as a summer cottage to year-round occupancy.

The association's reasoning appears to be, though it was not articulated by any witness, that because of that court ruling, the association has the right to expel members for what it perceives to be similar zoning violations. The power to enact and enforce municipal zoning regulations is accorded by law to local zoning authorities. General Statutes §§ 8-2 and 8-12. It seems a very long leap from "further[ing] and promot[ing] cooperation in all matters affecting the interest and protection of owners of land in the immediate neighborhood" to an enactment of property use regulations affecting selected properties. Radford testified that the association construes the seasonal limitation on occupancy as pertaining only to the twenty-three cottages, and not to any other properties that may be nonconforming according to the town's zoning regulations. The interest of the owners of those cottages is in using them to the fullest extent allowed by law, just like owners of other property at Pinewood Lake. If the town zoning officials of Trumbull challenged whether one of the plaintiffs was expanding a nonconforming use, the plaintiff would have the opportunity to present evidence that the cottage had always been used in the winter as well as in the summer, such that the use was not being expanded. Indeed, the plaintiffs presented the testimony of a long-time resident of the area, Bombero, who recalled the overnight winter use of the cottages by their owners over the years.

The association has evidently decided that the facts applicable to the appellant in *Weyls* must necessarily be the facts as to all the cottages that the association regards as subject to its bylaw, an assumption that would not, of course, be made by a zoning authority, which would be obliged to examine the facts concerning each individual property.

The record is devoid of any claimed "interest in and protection of" landowners that is at issue. The right to act as a zoning enforcer under procedures and standards of the association's own making is beyond what could fairly be understood to be the scope of the announced corporate purpose; and a bylaw that limits some landowners' use of their property for no stated general benefit cannot be regarded as a "protection."

The association has cited rulings from other jurisdictions upholding expulsions of club members. Some of those rulings are simply irrelevant to the issues appearing in the present case. In others, the club member had engaged in conduct that was demonstrably harmful to the club.

The conduct that is prohibited in the present case is living in a cottage—the same conduct that the association concedes is not regarded as harmful to it during the summer, when occupancy would, logically, produce a greater strain on association facilities.

This court finds that the bylaw on which the defendant based the expulsion of the plaintiffs is not germane to any of the association's announced corporate purposes and is, for that reason, unenforceable.

B

Discriminatory Enforcement of Use Limitations

The plaintiffs raise as a second ground for declaring bylaw article 5, § 3, unenforceable the claim that the bylaw is not "equally enforced as to all members" as is required by § 33-1056 (a). The text of the contested bylaw on its face states that all owners of "nonconforming real estate at Pinewood Lake shall comply in full with the regulations regarding nonconforming use as specified in the Zoning Regulations." As has been mentioned previously, the vast majority of the properties

at the lake do not conform to size and setback requirements and could, therefore, be considered "nonconforming real estate." The plaintiffs presented evidence that indicates that several homeowners, including Radford, conduct businesses out of their homes that arguably do not come within the definition of "customary home occupations" set forth in the previously cited zoning regulations of the town of Trumbull. If the association considers that zoning violations at nonconforming properties warrant expulsion in pursuit of the purpose of "protecting owners of land" in its neighborhood, zoning violations from business use of properties zoned only for residential use should equally lead to expulsion. The evidence establishes that the association has never expelled or even warned a landowner for using his home as a business location.

The association seeks to sidestep the claim of unequal enforcement by ignoring the first sentence of article 5, § 3, and narrowing the issue to the enforcement of the seasonal occupancy mentioned in the second sentence. The sentence that contains that limitation is, however, alleged to proceed from the association's view that winter occupancy is a zoning violation. If the rationale for article 5, § 3, is that it is a purpose of the association to protect landowners from zoning violations, in their community, then the bylaw is invalid if the plaintiffs have shown that the interest in punishing zoning violations is not equally enforced. Radford admitted that he conducts a business known as Castings and Plastic Molded Parts Company out of his home at 135 Pinewood Trail, and that he employs a person to work at that business. Another resident lists a Pinewood Trail address as the business location of DZD Associates, Inc.; and another address on the same road is listed in an association newsletter as the only address of an attorney. While it is no more predictable whether the Trumbull zoning authorities would consider these uses

violations than it is predictable that it would consider the plaintiffs' uses to be violations, the association's failure to apply equal enforcement to apparent zoning violations renders its bylaw unenforceable.

## IV

## ISSUES NOT PLEADED

The defendant has argued and briefed the present case in part as though the task of this court was to apply the zoning regulations of the town of Trumbull. Such a determination is beyond the scope of the complaint and, therefore, beyond the scope of this ruling. This court expresses no opinion regarding whether the plaintiffs' use of their cottages as winter residences would be found upon complaint to the zoning authorities to constitute a zoning violation.

This court likewise does not decide whether the cited corporate purpose would support an expulsion based on violation of restrictive covenants set forth in the deeds of the association and other grantees whose titles may derive from a common plan of conveyance by the First National Bank and Trust of Bridgeport. The association did not base its expulsion of the plaintiffs on any such enforcement, but only on the bylaw that this court has found to be unenforceable on two independent grounds for the reasons previously stated.

## V

## LACHES

The association raises as a special defense the claim that the plaintiffs are barred from injunctive relief by the doctrine of laches. " 'Laches consists of an inexcusable delay which prejudices the defendant.' " *Farmers & Mechanics Savings Bank* v. *Sullivan*, 216 Conn. 341, 350, 579 A.2d 1054 (1990), quoting *Danaher* v. *C.N. Flagg & Co.*, 181 Conn. 101, 107, 434 A.2d 944 (1980);

see also *Castonguay* v. *Plourde*, 46 Conn. App. 251, 265, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997). "First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." *Kurzatkowski* v. *Kurzatkowski*, 142 Conn. 680, 685, 116 A.2d 906 (1955). The plaintiffs commenced this action twenty months after they had been expelled from membership in the association. While they had been aware that the association had a bylaw prohibiting occupancy in the winter, Ellen Jancski, an attorney, testified that she had reached the conclusion that the bylaw was not enforceable, and that she and her family members had used their cottage from time to time in the winter without the association suspending them. The plaintiffs can hardly be held to have had a duty to seek a court adjudication of any bylaw they thought might be invalid. Absent an attempt at enforcement by the association, they might well have found that challenge would be deemed not ripe for adjudication.

This court finds that the plaintiffs became certain of the defendant's position that the bylaw was enforceable only when the association actually invoked it as the reason for terminating their memberships. This suit was filed within a reasonable time of that occasion.

The defendant, moreover, has failed to prove that it was prejudiced by the timing of the plaintiffs' challenge. The evidence pertinent to resolution of the claim that the bylaw was ultra vires is documentary evidence that was readily available: the articles stating the association's purposes and the current bylaws. The evidence pertinent to the claim of unequal enforcement was not shown to have become unavailable. At most, the defendant presented testimony that some association officers who might have been able to explain what was meant by prior versions of the bylaw at issue had died at some unstated time. Since the construction of prior bylaws was not a determinative issue with regard to a challenge

to the validity of the bylaw invoked by the defendant as the basis for expelling the plaintiffs from membership, no prejudice has been proven.

## VI

## RELIEF

The Connecticut Supreme Court ruled in *Sterner* v. *Saugatuck Harbor Yacht Club, Inc.*, supra, 188 Conn. 535, 537, that where an association acts in excess of its powers, such act may be enjoined. In order to be entitled to injunctive relief, a plaintiff must establish that he or she has suffered an irreparable injury for which there is no adequate remedy at law. *Karls* v. *Alexandra Realty Corp.*, 179 Conn. 390, 401, 426 A.2d 784 (1980). In considering whether to grant injunctive relief, a court should weigh the harm from denial of relief to the plaintiffs to the harm to others from granting the relief. *Anderson* v. *Latimer Point Management Corp.*, 208 Conn. 256, 262, 545 A.2d 525 (1988); *Moore* v. *Serafin*, 163 Conn. 1, 6, 301 A.2d 238 (1972).

The plaintiffs' deeds entitle them to use the lake and facilities of the association subject to its bylaws. Implicit in that grant is a limitation that the bylaws must comport with the applicable statute, § 33-1056. Since the plaintiffs have been deprived of their property rights under a bylaw that this court has found does not so comport, the plaintiffs have proven an injury. Denial of the use of the lake in front of one's lake cottage is a unique loss of a property right for which money damages would not constitute adequate compensation; and since no harm has been shown to be likely to occur to others from the granting of relief; see *DeCecco* v. *Beach*, 174 Conn. 29, 35, 381 A.2d 543 (1977); this court finds that injunctive relief is warranted.

## VII

## CONCLUSION

This court finds that the portion of article 5, § 3, of the defendant's bylaws that provides that "[n]on-conforming property may be occupied only during the period between April 1st through November 1st in any one year" is ultra vires and not germane to the association's stated purposes. This court, therefore, enters a judgment declaring this provision to be null and void.

This court further finds that the application against the plaintiffs of the remainder of the provisions of article 5, § 3, is invalid and violates § 33-1056 in that the association does not enforce this bylaw equally against all nonconforming uses of property, but has selected one group of properties for enforcement. Injunctive relief is warranted with regard to unequal enforcement of the bylaw and as relief ancillary to the declaratory judgment declaring unenforceable the portion of that bylaw prohibiting occupancy of certain properties between specified dates. See *Pinnix* v. *LaMorte*, 182 Conn. 342, 343, 438 A.2d 102 (1980) (injunctive relief may be ancillary to declaratory relief).

The defendant, its officers, agents and employees are hereby enjoined from denying rights of membership in the association to Gloria DeBernardo and Paul Jancski and to members of the plaintiffs' households who meet the association's criteria for membership of nonowners, on the basis of violation of article 5, § 3, of its bylaws. Ellen Jancski has been proven to be a person eligible for inclusion in the relief ordered; Thomas DeBernardo has not, and no relief is awarded to him. Because the court has found that the plaintiffs were wrongfully deprived of membership rights since January 1, 1992, reinstatement may not be conditioned on payment of back dues for the years of expulsion or other requirements stated in article 5, § 8, of the bylaws.