[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION
A. BACKGROUND
The plaintiff seeks a temporary injunction ordering the defendant Sportsman Association and its five defendant Executive Committee members CT Page 10021 to reinstate the plaintiff's club membership, which was suspended for one year on February 11, 2002.
B. FACTUAL FINDINGS
After review of the oral trial testimony and the exhibits, and having evaluated the credibility of the witnesses, the court finds the following facts.
The plaintiff has been a member of the defendant private association for 56 years and a life member for 16 years. Some of the objectives of the Association as stated in its corporate by-laws are "To advance the protection, propagation, and conservation of fish; game, wildlife . . .; to prevent the destruction of property and natural resources . . .; to promote good relations between sportsmen, landowners, and the general public. . . ."
Throughout his many years as a member, the plaintiff has worked hard and effectively to further the best interests of the association. He has served on myriad committees, including over 30 years as a member of the Board of Directors. In short, he has been involved in all aspects of the club.
Over the past several years the plaintiff has become increasingly dissatisfied with what he perceives to be a gradual deterioration at the club of its traditional concern for safety, cleanliness and conservation.
Never one who was reluctant to voice criticism, the plaintiff has spoken out, sometimes in a heavy-handed and caustic manner, both on the association grounds where members were gathered, and by letters to the Executive Committee and Board of Directors.
On March 20, 2000, the Board of Directors unanimously passed a motion to inform him by letter of their findings that in various specified ways, his conduct was not in the best interests of the Association. The letter described itself as a letter of reprimand and stated that if the plaintiff continued to act in a way that was detrimental to the smooth operation and management of the club, "the Board will be forced to take more serious action." The plaintiff wrote back disagreeing, and expressing concern about the safety of the shooting range.
On October 20, 2001, a Saturday, there were a number of members on the association grounds and near the club building. One of the members, Jason Marshall, President of the club, was filleting a bird he had shot, on a table which was alongside the building. The plaintiff objected to this, CT Page 10022 believing it to be unsanitary and a threat to the environment. As a result, he "blew his top," loudly berating and hurling invective at Mr. Marshall. This reaction was not justified on the merits nor in the manner it was delivered.
On October 22, 2001, a club member, William Lloyd, co-chairman of the Game Committee, who had witnessed the above-described incident between the plaintiff and Jason Marshall, wrote a letter to the Executive Committee, Board of Directors and members, saying that the plaintiff's behavior was `disgraceful,' and requesting, in accordance with the by-laws, that the Executive Committee revoke Mr. Humphrey's membership. Upon receipt of this request, the Secretary of the Association sent the plaintiff a letter notifying him that pursuant to the by-laws, a member had formally requested his removal, and that "A closed hearing to consider the matter of your expulsion from NWCSA is scheduled . . . November 12, 2001 at 7:30 P.M. You are encouraged to attend for the purpose of exercising your rights under the By-Laws." The plaintiff arrived at the hearing with his attorney, and the charges against him were read.
The hearing was adjourned because the Executive Committee wanted time to decide if they would retain an attorney for the hearing, inasmuch as the plaintiff had done so. After consideration, the Committee decided against obtaining an attorney, mainly because of the cost. On January 21, 2002, the Association sent the plaintiff a notice of the rescheduled hearing concerning his membership. That letter, which is plaintiff's exhibit 10, reads as follows:
 Northwestern Connecticut Sportsman's Association P.O. Box 618 Winsted, Connecticut 06098 21 January 2002 Mr. Frederick J.S. Humphrey 133 East Mountain Avenue Winsted, CT 06098
Re: Notice of hearing regarding your N.W.C.S.A. Membership
Dear Mr. Humphrey,
 At the 20 January 2002 meeting of the Officers and Directors of NWCSA the Executive Committee convened to review the open matter of charges against you and action thereon.
As you recall, pursuant to the relevant articles of our CT Page 10023 By-Laws, a member in good standing has formally requested that the Executive Committee take action to remove you from our Membership for conduct inconsistent with the best interests of NWCSA. In addition, the Board of directors sent you a letter on 22 March 2000 noting serious issues regarding your unacceptable behavior and prescriptive requirements for your continued membership that you have failed to heed.
 A closed hearing to consider the matter of your expulsion or suspension from NWCSA is scheduled to begin in the N.W.C.S.A. clubhouse 11 February 2002 at 7:00 PM. You are encouraged to attend for the purpose of exercising your rights under the By-Laws. As this is a closed meeting, you will not be permitted to bring counsel or any other individuals with you. If you elect to attend, you will be asked to listen to the charges against you after which you will be given up to 30 minutes to respond. At that time, you will be required to leave the premises and the Executive Committee shall decide on a course of action. You may also elect to not attend. In either scenario the Executive Committee will inform you of their decision in writing within 10 days of completing the hearing process.
Please consider this letter the required 15-day notification.
Sincerely,
 Thomas E. Andersen Secretary, NWCSA
Plaintiff's exhibit 1, the By-Laws, contains on page (7), `Article IX: Suspension or Expulsion,' which reads as follows:
ARTICLE IX: SUSPENSION OR EXPULSION
 A) Any officer may be removed by a two-thirds vote of the members in good standing present at any special meeting called for this purpose. No vote on suspension or removal may be taken unless at least fifteen days notice in writing shall have been given to the officer on the reasons of his removal and of the time and place of the special meeting at which such ballot on his removal is to be taken. At such special meeting the officer shall be given a full hearing.
B) Any member may be suspended or expelled from the Association for any cause deemed sufficient by the CT Page 10024 Executive Committee by a two-thirds affirmative vote of the members of the Committee present at any regular or special meeting. No vote on suspension or expulsion may be taken unless at least fifteen days notice shall have been given to the member of the charges preferred and of the time and place of the meeting of the Executive Committee at which such charges will be considered. At such meeting the member under charges will be given a full hearing.
 C) Charges against any Officer or Member may be preferred by any member in good standing. They shall be in writing clearly stating the facts relied upon and accompanied by all affidavits or exhibits which are to be used in their support. Such charges shall be filed with the Secretary, who will immediately notify the President. The President will call a meeting of the Executive Committee to hear the charges. The Secretary will give at least fifteen days notice of the meeting to each member of the Executive Committee and to the accuser and the accused, such notice shall be in writing and will include a true copy of the charges and of the supporting affidavits and exhibits.
 D) Any member suspended or expelled by the Executive Committee may appeal to the full membership of the Association. Such appeal shall be made in writing to the Secretary who will notify the President. The President will call a special meeting of the Association for the purpose of acting on the appeal. The Secretary shall give at least fifteen days notice in writing to all the Members of the Association in good standing stating the date, time, place, and reason for the special meeting. At the meeting of the full membership of the Association, the Secretary will read the original charges, the supporting affidavits, and will read or display the accompanying exhibits, and will read the minutes of the special meeting of the Executive Committee at which the charges were heard and action taken. A vote will be taken by ballot of the members present and a two-thirds vote shall be required to reverse the action of the Executive Committee.
The plaintiff chose not to attend the February 11, 2002 meeting because he thought that inasmuch as the hearing was to be a `full hearing,' he should have been able to bring witnesses and counsel. Since this was forbidden by the notice of hearing, he believed that the hearing would be inherently unfair, so he didn't attend. The hearing took place, and by letter of February 13, 2002 (plaintiff's Exhibit 13), the plaintiff's CT Page 10025 membership was suspended for one year to be followed by a one year probationary period. Mr. Humphrey did not avail himself of the right to appeal which is permitted by Article IX, D of the by-laws (above), because in his words, it's `a kangaroo court.' The reason stated by the Executive Committee for the action they took was "on the basis of the incident identified in Mr. Lloyd's letter of 22 October 2001, issues identified in the Board of Directors letter of 22 March 2000 and your acts of conduct detrimental to or not in the best interests of NWCSA."
The plaintiff wrote many sarcastic, inflammatory and intemperate letters to Association officers in 1999, 2000 and 2001, some of which questioned their integrity, common sense and intelligence.
C. DISCUSSION
There are two threshold issues here, first whether or not the plaintiff was afforded a reasonable hearing before he was suspended. The Supreme Court of Connecticut has defined the sine qua nons of a fair and adequate hearing.
 The statutory requirement of reasonable bylaws requires a hearing that is meaningful and a sanction is reasonable; where a corporation acts contrary to those requirements its action may be enjoined.
Sterner v. Saugatuck Harbor Yacht Club, Inc., 188 Conn. 531, 536 (1982).
Therefore the court must first decide whether the hearing which took place on February 11, 2002 was meaningful.
This court concludes that it was not. At the hearing, the complaining witness, Mr. Lloyd, was allowed to state what he heard the plaintiff say on October 20, 2001. That testimony was a key element in the hearing. Let us suppose that the plaintiff had a witness who was prepared to testify that he, too, heard what the plaintiff said, and it was entirely different from Mr. Lloyd's version. Fundamental fairness dictates that the plaintiff should have been able to counter Mr. Lloyd's evidence with countervailing evidence. Since the plaintiff was told he couldn't have any witnesses, any such hearing could only be described as one-sided and not meaningful. Furthermore, the by-laws required not just a hearing, but a `full' hearing. A hearing cannot be full unless a person facing charges can introduce evidence on his own behalf, especially when the other side is permitted to do so.
In addition, the association's directive that the plaintiff could not have counsel rendered the hearing less than `full' and less than CT Page 10026 meaningful. It is significant to note that on November 12, 2001, when the plaintiff came to the first hearing with an attorney, the association didn't say that an attorney wasn't permitted, but rather adjourned the hearing so they could decide whether they wanted to have an attorney represent them. They decided not to retain an attorney, not because they thought it inappropriate, but because they didn't want to spend the money and because some attorneys told them they didn't need counsel. So, rather late in the game, they decided that since they chose not to have counsel, they wouldn't let the plaintiff have one either.
A `full' hearing bestows on the parties the right to have an attorney.
The second threshold issue is whether the fact that the plaintiff did not appeal bars this action.
First, the by-laws only permit, and do not require an appeal. Second, the plaintiff was justified in believing that based upon the unreasonable ground-rules established for the hearing itself, an appeal from the results of that unfair hearing, based upon a reading of the minutes of the hearing appealed from, would suffer from the same inherent unfairness.
CONCLUSIONS
In light of the above, it is not necessary for the court to reach the issue of the merits of the suspension of the plaintiff. He did not receive the hearing he was entitled to.
Judgment is entered for the plaintiff for injunctive relief, ordering reinstatement of the plaintiff's prior status and privileges in the NWSCA.
 ___________________ Walsh, J.